### HINES, Director General of Railroads, v. PARRY. (No. 305–3619.)

(Commission of Appeals of Texas, Section A. March 29, 1922.)

**1. Appeal and error ⟨key⟩1083(3)—Whether discretion in refusing new trial for communication with juror has been abused is a question of law.**

Whether there has been an abuse of judicial discretion in overruling a motion for new trial for communication by an outsider with a juror is a question of law, and not of fact, and a determination by the trial court and by the Court of Civil Appeals does not preclude revision by the Supreme Court, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1958–1961.

**2. New trial ⟨key⟩47—Misconduct of jury held to require new trial.**

Where, during the deliberations of a jury in a personal injury action against the Director General of Railroads, the jury stood five for plaintiff and seven for defendant, and, after a juror had communicated to the others that during the separation of the jury for dinner an outsider had told him that the conductor on the train where the injury had occurred had stated that plaintiff had been hurt and was entitled to some damages, the jury found for plaintiff, a new trial should have been granted.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by John Richard Parry against Walker D. Hines, Director General of Railroads. Judgment for plaintiff was affirmed by the Court of Civil Appeals (227 S. W. 339), and defendant brings error. Reversed and remanded as recommended by the Commission of Appeals.

Bonner, Storey & Storey, of Vernon, and Goree, Odell & Allen, of Fort Worth, for plaintiff in error.

Weeks, Morrow, Weeks & Francis, of Wichita Falls, and Berry, Stokes & Killough, of Vernon, for defendant in error.

RANDOLPH, J. This suit was an action for damages for personal injury brought by John Richard Parry as plaintiff against Walker D. Hines, Director General of Railroads, as defendant, in the district court of Wilbarger county. A judgment in favor of plaintiff for $2,500 in that court was affirm-

ed by the Court of Civil Appeals for the Seventh District. 227 S. W. 339.

Before proceeding with the discussion of the case, we desire to commend the industry and ability of the attorneys for both parties before this court. They have produced for our consideration, we believe, every Texas case even remotely bearing upon the question before the court, and have wonderfully assisted us in our labors.

The only question presented to the Supreme Court in the application for writ of error is one complaining of misconduct on the part of the jury trying the case. The facts constituting the alleged misconduct are substantially that the jury retired on Friday just before noon, and after considering the case for a short time they were permitted to separate for dinner. During the noon hour Friday, Fred Thompson, one of the jurors, was approached by an outside party who made certain statements to him relative to declarations alleged to have been made to him by a certain conductor, who was later identified as Leslie, the conductor on the train on which the alleged injury occurred, and who was an important witness for the defendant. The plaintiff had testified to the facts of the accident and claimed that he was seriously injured in the back. The conductor had testified to facts which directly contradicted plaintiff's testimony and which would have shown that it was almost impossible for the plaintiff to have been injured at all if the jury should have believed his testimony. When Thompson returned to the jury room after dinner Friday, he repeated to the jury the statements that had been made to him by this outsider. It was suggested that these statements be not considered, and especially the foreman called attention of the jury to the fact that they should not be considered.

It appears that some time during the jury deliberations they had stood nine to three—nine for the defendant and three for the plaintiff. However, at the time Thompson repeated the statements to the jury it is more than probable, as disclosed by the evidence, that the jury stood seven for the defendant and five for the plaintiff. It does not satisfactorily appear that there was any other jury vote taken that afternoon, but on reassembling next morning, Saturday morning, after a lapse of a very short time, probably an hour, the seven jurors changed to the plaintiff, and the jury returned a verdict for him in the sum of $2,500.

It can serve no useful purpose for us to attempt to set out in detail all the circumstances tending to establish our conclusion that the communication made by the juror Thompson to the jury was such as was likely to have influenced the verdict and thereby to have injured the defendant. The communication made by Thompson to the jury seems clearly testified to by the juror Mallow, as follows:

"What he said in substance was this, I believe: Well I think he said a railroad man had talked to him and said that Parry was entitled, I believe, to some of what he asked for—that he was hurt—that he was there and he did fall, and I think the words he used, he said he fell all over the car."

Five of the jurors were called by the parties to testify on the hearing of this question on the motion for new trial. All of those testifying stated that the communications so made by Thompson did not affect their verdict. There is no evidence as to its effect on the other seven, but several of those who testified declined to state their opinion as to what effect it had on the verdict of the other jurors.

It is a far cry from the jury of witnesses under the early English system to our modern jury surrounded by every safeguard the law can furnish. The Constitution of Texas guarantees to every citizen, in any controversy involving either life, liberty, or property a trial by jury, and declares that the right of trial by jury shall remain inviolate, but at the same time, for the purpose of safeguarding the purity and efficiency of such jury service, provides that the Legislature shall pass such laws as may be needed to regulate the same. This the Legislature has done, and a method of detailed selection has been provided. The method of the selection of the jurors and the jealousy with which their deliberations are safeguarded have been the product of the experience of the best legal minds. With the courts is deposited the power to enforce all rules safeguarding the consideration of cases by juries, and, unless these rules are reasonably enforced, jury service will develop into a system of verdicts by outside influences which was never contemplated by the law.

Article 1960, Vernon's Rev. Civ. Stats., provides that in the event the jury are permitted to separate they shall be admonished by the court that it is their duty not to converse with or suffer themselves to be addressed by any other person on any subject connected with the trial.

This statute was not intended as a mere formality, but was enacted with the knowledge that such communications were dangerous to the purity of the service. The provision requiring the jury to be kept together after the submission of the case (article 1958), the privacy required in those deliberations (article 1959), and the method by which the jury may communicate even with the court itself (article 1961) are all evidences of the jealousy with which the law views the sacredness of those deliberations.

The honorable Court of Civil Appeals, in passing on this question, say:

"It does not appear from the record that the trial court has abused his discretion in overruling this ground of the motion."

And the defendant in error insists here that it is a question of fact determined, and that, the trial court and Court of Civil Appeals having determined the matter of fact adversely to plaintiff in error's contention, the Supreme Court is thereby concluded from revising such action.

[1] To this we cannot assent. The question as to whether or not there has been abuse of judicial discretion is a question of law.

In Watts v. Holland, 56 Tex. 61, the Supreme Court, speaking on the question of authority to review such questions, say:

"Whilst an appellate court will very properly refuse ordinarily to revise the action of an inferior court as to matters which are confided to the discretion of the judge below in the administration of that class of rules which in their nature are not susceptible of being revised so as to determine whether the discretion has been abused or not, yet where that discretion thus confided involves the duty of a court to accord to a party a right necessary to the attainment of justice in determining his right to life, liberty, or property, and, as a matter of law, in the given case, it is apparent that the party was entitled to have that discretion exercised in his favor, the reason of the ordinary rule of not revising the action of the court below ceases, and it ought to be revised just the same as any other alleged error."

Chief Justice Brown, in the case of H. & T. C. Ry. Co. v. Gray, 105 Tex. 43, 143 S. W. 606, also passing on the authority of the Supreme Court to review the action of the trial court, says:

"We had doubt as to the authority of this court to review the ruling of the trial court upon the motion, so far as based upon the evidence of the jurors, and requested counsel for each party to furnish arguments, to which they responded by able and helpful discussions of the question. After proper consideration given to the briefs furnished, we conclude that the 'discretion' expressed in the act above copied is upon the same level with the discretion vested in the trial judge in many instances, and that we may review its exercise wherein it clearly appears that the rights of parties have been disregarded. If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside. * * *"

Our attention is called to the decision of the Supreme Court in the case of Wilson v. Southern Traction Co., 234 S. W. 663. In that case Justice Greenwood says:

"The Court of Civil Appeals did not pass on the assignment of error seeking a reversal of the trial court's judgment for misconduct of the jury further than to hold that improper conduct was shown. It is probably necessary to make fact findings in disposing of the assignment, and we have concluded that defendant in error is entitled to have same determined by the Court of Civil Appeals."

While the above decision calls for findings of fact by the Court of Civil Appeals and recognizes the rule that upon questions that are purely questions of fact the decision of the Court of Civil Appeals is binding on the Supreme Court, yet it does not hold that a ruling of law made by the Court of Civil Appeals upon the ascertained facts is not subject to revision by the Supreme Court, and hence is in no wise in conflict with the decisions quoted above.

As to whether or not the communication made was such as would render it "reasonably doubtful" as to its having affected the jury verdict, we can only say: The jury stood five for plaintiff and seven for defendant. After this communication was made to them, the seven came over to the side of the plaintiff, and, where they had before that refused to find anything in his favor, they agree on a verdict for $2,500 in plaintiff's favor. In their testimony the five jurors who do testify can give no satisfactory reason for the change of position. Nor is any effort made to show that the seven who did not testify were not influenced in their verdict by this unlawful communication. To our minds, the circumstances surrounding this jury's ultimate findings do not appear to us to be free from unwarranted influence. It is true that the members of the jury who are questioned strenuously deny that their minds were affected by the statements made to them. But this is only natural. Men are slow to admit such influence in their deliberations. They may not have realized that they were being influenced.

[2] Feeling that the communication made was such as leaves it doubtful as to whether or not the verdict of the jury, in part at least, was not influenced against the defendant, we recommend that the judgments of the trial court and Court of Civil Appeals be reversed, and remanded for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.