**PAYNE, Agent, v. HARRIS. (No. 310-3639.)** *

(Commission of Appeals of Texas. Section B. May 24, 1922.)

1. **Appeal and error** &#9756;230—**Objections to charge not considered if not presented before charge was read.**

Under Rev. St. 1911, arts. 1971-1974, objections to a charge which were not presented to the court before the charge was read to the jury cannot be considered on appeal.

2. **Master and servant** &#9756;204(1)—**Insufficient force held a "defect" within statute limiting railroad's defense of assumed risk.**

Rev. St. 1911, art. 6645, limiting the defense of assumed risk, is applicable in an action by a railroad shop workman for injuries from failure to furnish sufficient help to lift a heavy box; a force of men less than that legally required to perform a given service being a "defective" force, constituting a "defect" within the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Defect.]

3. **Courts** &#9756;90(1)—**In view of Supreme Court decisions denying writs of error on holdings adverse to contention as to construction of statute, its opinion will be taken as adverse to such construction.**

In view of decisions of the Supreme Court denying writs of error on applications on holdings adverse to the contention that Rev. St. 1911, art. 6648, declaring corporations or others operating railroads liable to persons injured while employed by "such carrier operating such railroad," applies only to servants performing work peculiar to the operation of railroads, that court's opinion will be taken as adverse to such construction.

4. **Master and servant** &#9756;180(1)—**Fellow-servant doctrine abrogated as to all railroad employees; "carrier operating such railroad."**

Rev. St. 1911, art. 6648, declaring every corporation or other person operating a rail-

road liable to persons injured while employed "by such carrier operating such railroad," abrogates the common-law doctrine of fellow servant as to all such employees, whether or not they perform work peculiar to the operation of engines, cars, and trains; "carrier operating such railroad" merely designating the employer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Carrier.]

**5. Appeal and error ⚖⇒843(2)—Whether there was evidence on which to base charges need not be considered where cause is remanded.**

Where the court, on reversing a judgment, remands the cause for a new trial, it is unnecessary to decide whether there was evidence on which to base portions of the charge.

**6. Trial ⚖⇒252(1)—Issue not raised by evidence should not be embodied in charge.**

An issue on which there is no evidence should not be embodied in the charge.

**7. Appeal and error ⚖⇒1066—Charge presenting several issues, some of which are not raised by evidence, is reversible error where jury returns verdict which might be based on portion unsupported by evidence.**

A charge presenting several material issues, some of which are not raised by the evidence, is reversible error, where the jury returns a verdict that might be based on a portion of the charge unsupported by the evidence; it being impossible to know whether the verdict is based on such portion.

**8. Appeal and error ⚖⇒1083(6), 1094(1)—Decision of Court of Civil Appeals on the facts binding on Supreme Court unless question of law is involved.**

The decision of the Court of Civil Appeals on purely fact questions is binding on the Supreme Court, but a ruling of law on the facts is subject to reversal.

**9. Appeal and error ⚖⇒1094(2)—Judgment reversed and cause remanded, where findings of fact on motion for new trial leave it reasonably doubtful whether juror's improper statements had no influence on jury.**

While refusal of a new trial because of communication to the jury or its reception of other testimony than that given on the trial is in the discretion of the court under Vernon's Sayles' Ann. Civ. St. 1914, art. 2021, affirmance of judgment by Court of Civil Appeals will be reversed and the cause remanded for a new trial, where trial court's findings of fact as to a juror's statements as to the possible reason why certain witnesses were not produced leave it reasonably doubtful as to whether such statements had no influence on the jurors in arriving at their verdict.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by C. S. Harris against John Barton Payne, Agent, etc. From a judgment of the Court of Civil Appeals (228 S. W. 350) affirming a judgment for plaintiff, defendant brings error. Reversed and remanded.

F. H. Prendergast and Geo. Prendergast, both of Marshall, for plaintiff in error.

S. P. Jones, of Marshall, for defendant in error.

HAMILTON, J. The case, as stated by the Court of Civil Appeals, follows:

"In June, 1918, the appellee, C. S. Harris, was injured while in the service of the appellant as the Director General of the Texas & Pacific Railway Company. This appeal is from the judgment in favor of Harris for $13,000 as damages.

"The evidence shows that Harris was employed in the railway shops at Marshall, Tex., as a laborer. At the time of the injury he and three other employés were engaged in moving boxes filled with iron cuspidors from one part of the building to another. The injury occurred as the result of an effort by Harris and his fellow employés to lift one of those boxes and place it upon a truck. Harris testified that Kimbrough, the foreman, brought the truck to the box and ordered them to lift the box onto the truck. After making an unsuccessful effort to lift the box Harris says they 'all kinder straightened up, and I said something about some one not trying to lift it. The foreman was worried and angry, and told us to lift it onto the truck, and we tried to do so. I made the remark to the man in front that they were not trying to lift, or something like that, and the other fellow made some remark; then the foreman told us to lift it onto the truck, and when we complained about some laying off and not lifting it, he kinder jostled and kicked the truck and said, "G—— d——, put the box on there; put the stuff on there, if you are going to. Got to clean out here this evening; just got this evening to get this stuff." * * * We took hold again, and lifted at it, to put it on the truck, but didn't lift it. I made an effort to lift it, but couldn't. When I lifted at it the last time, something seemed like it tore loose in my head or ear. It popped some way. I don't know—best I can tell how it did feel—sorter popped and tore, and my head seemed to get big and swell, and I quit— just stopped. The injury was to the right side of my head. I was injured the last time I lifted the box, after Mr. Kimbrough cursed and said, "Put it on the truck."'

"The evidence warrants a finding that Harris sustained serious injury as a result of the second attempt to lift the box. The petition charged negligence on the part of the foreman in ordering the appellee and his fellow employés to lift a box too heavy for them to handle in that manner, and also negligence on the part of the three fellow employés in failing to render Harris proper assistance in lifting the box.

"Defendant pleaded, among other things, assumed risk. The issues were submitted to a jury under a general charge from the court, and a verdict was rendered in favor of the appellee for $18,000. This, however, was reduced by the court, on a motion for a new trial, to $13,000."

The Court of Civil Appeals affirmed the judgment. 228 S. W. 350.

[1] Plaintiff in error complains of the court's charge on various grounds. But the only exception or objection shown, by the record, to have been made by him, is that the portion thereof submitting the issue of assumed risk "fails to instruct the jury affirmatively relating to assumed risk and only sets up an exception where the doctrine of assumed risk would not apply, and fails to state when the same would apply." Therefore, no objection having been made to any other portion of the charge before it was read to the jury, all complaints based on other portions are unavailing here because, by failure to object to the charge, in the other particulars complained of, all such objections were waived. In an exhaustive review of articles 1971–1974 of the Revised Civil Statutes of 1911, our Supreme Court, speaking through Chief Justice Phillips, in G., T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 187 S. W. 184, says:

"The effect of amended article 1971 and unamended article 1972, in relation to the general charge of the court, when construed together, is plainly this:

"1. At the conclusion of the introduction of the testimony the judge is required to submit the charge to the respective parties or their attorneys for their examination and the presentation of objections to it. A reasonable time must be given them for this purpose. Objections to the charge shall in every instance be presented to the court before it is read to the jury. All objections not so made and presented shall be considered as waived.

"2. Since, by article 1972, the charge is made a part of the record of the cause and is to be regarded as excepted to and subject to revision for errors without the necessity of taking any bill of exception to it, no bill of exception is necessary to entitle a party to a review of the errors in the charge; provided, in the particular complained of, it was objected to before read to the jury. In other words, construing the two articles together, the change worked in the law is to require that for errors in the general charge to be reviewable on appeal they must be brought to the court's attention before the charge is read to the jury; otherwise they are waived. * * * As revealed by the terms of the amendatory act, the larger purpose of the Legislature, in relation to the general charge, was to give the trial judge an opportunity to correct any errors in his charge before giving it to the jury, so as to avoid new trials or reversals on that account. To accomplish this purpose, the method devised was the requirement of amended article 1971, that all objections to the charge shall be presented to the court before it is read to the jury, upon the penalty of a waiver of the error. * * * The three articles, that is, amended articles 1970 and 1971 and unamended article 1972, in our opinion simply mean that in order to obtain a review of the general charge of the court on the appeal because of any error therein, an objection to the charge in the particular complained of must be presented to the trial judge before the charge is read to the jury, and that when such

objection is so made, it is the right of the complaining party to have the error considered by the appellate court, without the necessity of going through the formal procedure of reserving a bill of exception to the charge, inasmuch as article 1972 left unamended by the act, distinctly provides that no bill of exception to the charge is necessary for its revision on appeal on account of error."

Assignments of error based upon the single objection above noted cannot be considered because there is nothing in the record showing that the objection was presented to the court before the charge was read to the jury. In the case of G., T. & W. Ry. Co. v. Dickey, supra, the Supreme Court said:

"The amendatory act is silent with respect to the manner in which it is to be evidenced of record what objections were made to the general charge of the court, and that those made were presented to the court before the reading of the charge to the jury, as is plainly required by amended article 1971. To accomplish the purpose of the amendatory act in its relation to the general charge there should, of course, be some authentic record that the objections to the general charge urged on the appeal were in fact presented to the trial court, and presented before the charge was read to the jury. We think a filed paper in the cause setting forth the objections, with some due authentication of the fact that they were presented to the court, and before the reading of the charge to the jury, substantially complies with the requirement of amended article 1971. In this case the record distinctly shows what the objections to the general charge were as presented by the attorneys for the defendant, as recited and set forth in a filed paper in the cause; and, as above shown, there is in the record the order or judgment of the court, taken from the minutes of the court and, therefore, necessarily approved by the judge, plainly reciting that the objections to the charge were presented to the court before the reading of the charge to the jury; were duly considered, and were overruled. We do not think there could be a more reliable authentication of record presented that the objection urged on the appeal to the erroneous paragraph of the general charge above noted was in fact made as required by amended article 1971."

[2] Plaintiff in error contends that article 6645 of the Revised Civil Statutes, which limits the defense of assumed risk, does not apply to the facts of this case. That article is as follows:

"In any suit against a person, corporation, or receiver, operating a railroad or street railway, for damages for the death or personal injury of an employé or servant, caused by the wrong or negligence of such person, corporation, or receiver, that the plea of assumed risk of the deceased or injured employé where the ground of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death, shall not be available in the following cases:

"First. Where such employé had an opportunity before being injured or killed to inform

the employer, or a superior entrusted by the employer with the authority to remedy or cause to be remedied the defect, and does notify, or cause to be notified, the employer, or superior thereof, within a reasonable time; provided, it shall not be necessary to give such information where the employer, or such superior thereof, already knows of the defect.

"Second. Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger, and in such case it shall not be necessary that the servant or employé give notice of the defect as provided in subdivision one of this article."

We agree with the Court of Civil Appeals that—

"The term 'defect,' as used in the statute, should not be restricted, so as to defeat the manifest purpose of the Legislature in enacting this law. It was the legal duty of the railway company in this instance to furnish a sufficient force to perform the service in which the appellee and his associates were engaged. A failure to discharge that duty created a situation not materially different from one arising from the failure to furnish adequate mechanical equipment when such is to be used in lifting heavy weights. The word 'defective' means, among other things, incomplete; less than what is required. It may be said with propriety that a force of men less than what the legal duty of the employer required to perform a given service is, in a sense, a 'defective' force, within the meaning of the statute."

That the statute is applicable to a state of facts such as we have in this case is sustained by the opinion in the case of Stephenville N. & S. T. Ry. Co. v. Shelton, 208 S. W. 915, rendered by the Commission of Appeals, Section B.

[3] Plaintiff in error contends that the persons assisting plaintiff to lift the box were his fellow servants and that the defendant is not liable for injuries resulting from their negligence. He grounds this contention upon the proposition that article 6648, Texas Civil Statutes, must be confined, in its application, to servants performing work peculiar to the operation of railroads and that the work in which defendant in error claims to have been injured was not such work.

In the case of St. Louis, S. F. & T. Ry. Co. v. Jenkins, 137 S. W. 711, the same contention was made, and the Dallas Court of Civil Appeals, through Judge Talbot, on this question, said:

"Section 1 of said act, so far as need be quoted, reads: 'That every corporation, receiver or other person operating any railroad in this state shall be liable in damages to any person suffering injury while he is employed by such carrier operating such railroad.' Appellant contends that this section of the act indicates that its provisions are applicable only to those employés of a railway company who are, when injured, actually engaged in the operation of a railway train or cars. We do not concur in this construction of the statute. The statute does not make the railway company liable only for an injury suffered by the employé while he is engaged in the work of operating its trains or cars, but also for an injury received in the discharge of the duties required of him while employed by such company. It is manifest, we think, that it was the intention of the Legislature to apply the words 'operating any railroad' to the word 'carrier,' and not, as seems to be the contention of appellant's counsel, to the word 'employed.' Indeed, as the sentence is constructed, it does apply to the word 'carrier' and can have reference to no other word therein."

The Supreme Court denied a writ of error in that case. The same question was involved in the case of Houston & T. C. R. Co. v. Bright, 156 S. W. 304, and was disposed of by the Galveston Court of Civil Appeals, speaking through Judge McMeans, by simply quoting what was said of it in the Jenkins Case, supra. A writ of error was denied by the Supreme Court in that case also.

The question thus having been submitted to the Supreme Court in applications for writs of error on holdings adverse to contentions of plaintiff in error and writs of error having been consistently denied on such applications, we take it that the Supreme Court does not agree with the plaintiff in error in his construction of article 6648.

[4] Aside from any former judicial interpretation of the statute, we think there can be no question that the words "operating such railroad" modify the word "carrier" and have no reference to the character of work "any person suffering injury" may be engaged in at the time of such injury. The group of words "carrier operating such railroad" merely designates the employer. Hence we are constrained to hold that the act abrogates the common law doctrine of fellow servant as to all employés of any person or corporation operating a railroad in this state, and therefore is not confined to servants performing work peculiar to the operation of engines, cars, and trains.

[5-7] It is urged that the court erred in submitting certain matters to the jury which plaintiff in error contends were not raised by the evidence. In view of another trial it is unnecessary for us to decide whether there was evidence on which to base those portions of the charge or not. It is elementary, of course, that an issue on which there is no evidence should not be embodied in the charge. Where several issues are presented, some of which are raised by the evidence and some of which are not, if they are material, and the jury returns a verdict that might be based on a portion of the charge unsupported by the evidence, it is error, because it is impossible to know whether the verdict is based on a portion for which there was no support in the evidence.

It is contended that—

"The court erred in not granting a new trial because of the misconduct of the jury while

deliberating upon their verdict in the jury room, in that they heard and considered a communication made by one of the jury to other members thereof and because the jury received other testimony than that which was introduced on the witness stand and heard and considered communications which were not introduced in evidence and which were material and which were calculated to prejudice the minds of the jury against the defendant and which did influence them in rendering their verdict to the damage of the defendant."

The court heard evidence on the motion for new trial based on the alleged misconduct and made findings of fact and conclusions of law thereon as follows:

"The above-entitled case was tried before a jury on May 4th, and 5th. The jury retired to consider their verdict about 9:30 a. m. May 5th and stood 10 for the plaintiff and 2 for the defendant until the noon hour. After the noon hour they returned to their jury room and proceeded further to consider their verdict, and shortly thereafter returned a verdict in open court in favor of the plaintiff for the sum of $18,000.

"Mr. Charley Luther was one of the jurors in the case. During the discussion in the jury room there came up the matter as to why some of the men who assisted Harris in lifting the box of spittoons were not present at the trial of the case and as to why they did not testify.

"I am unable to determine whether Mr. Luther or some other member of the jury called up this matter.

"I find that Mr. Luther stated, when this matter was brought up, that he had worked for the Missouri, Kansas & Texas Railroad for about eight or nine years and that he knew that sometimes things would be covered up and gave his personal experience while working for the 'Katy' railroad as follows:

"One instance that he was on a 'Katy' engine and had the crossing blocked and a fellow came along with a box that had a nice suit of clothes and shirts in it, and that this man turned to walk around the engine and dropped his clothes in a hole of water with grease on the water and ruined his clothes and that he sued the company for $150 for the value of his clothes; and in making an investigation of the case and when he was called upon as a witness about it he informed them that he knew nothing about it. He gave another instance while he was in the employ of the 'Katy' railroad that a boy was driving a wagon and team near the depot of the railroad and that when the engine approached the team ran away and threw the boy out of the wagon and that he sued the company for damages and Luther when called upon to give information about the affair stated that he knew nothing about it.

"I find that Luther was making these statements for the purpose of illustrating the position of men working for the railroads and as a possible explanation why the witnesses in question were not present attending court at the trial.

"I further find that said statements on the part of Luther did not influence the verdict of the jury."

The statute governing motions for new trial based on misconduct of the jury is:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of same, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof; and it shall be competent to prove such facts by the jurors or others, by examination in open court; and, if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, in the discretion of the court, be granted." Article 2021, Vernon's Sayles' Civil Statutes 1914.

[8] Upon questions purely of fact the decision of the Court of Civil Appeals is binding upon the Supreme Court, but a ruling of law upon the facts ascertained by the trial court and Court of Civil Appeals is subject to reversion by the Supreme Court. Hines v. Parry (Tex. Com. App.) 238 S. W. 886.

On the question of authority to revise the action of an inferior court as to matters which are confided to the discretion of the judge below, the Supreme Court, in Watts v. Holland, 56 Tex. 61, says:

"Whilst an appellate court will very properly refuse ordinarily to revise the action of an inferior court as to matters which are confided to the discretion of the judge below in the administration of that. class of rules which in their nature are not susceptible of being revised so as to determine whether the discretion has been abused or not, yet where that discretion thus confided involves the duty of a court to accord to a party a right necessary to the attainment of justice in determining his right to life, liberty or property, and, as a matter of law, in the given case, it is apparent that the party was entitled to have that discretion exercised in his favor, the reason of the ordinary rule of not revising the action of the court below ceases, and it ought to be revised just the same as any other alleged error."

On the specific question of authority to review the action of the district judge in overruling a motion for rehearing based on misconduct of the jury, Chief Justice Brown, in the case of H. & T. C. R. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606, said:

"We had doubt as to the authority of this court to review the ruling of the trial court upon the motion, so far as based upon the evidence of the jurors, and requested counsel for each party to furnish arguments, to which they responded by able and helpful discussions of the question. After proper consideration given to the briefs furnished we conclude that the 'discretion' expressed in the act above copied is upon the same level with the discretion vested in the trial judge in many instances and that we may review its exercise wherein it clearly appears that the rights of parties have been disregarded. If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside."

[9] It is observed that the court finds that—

The juror "Luther was making these statements for the purpose of illustrating the position of men working for the railroads and as a possible explanation why the witnesses in question were not attending court at the trial."

Luther told the jury that "he had worked for the Missouri, Kansas & Texas Railroad for about 8 or 9 years," and that he knew that "sometimes things would be covered up." His conduct in "covering up" for the "Katy" is then detailed by him. The only "explanation why the witnesses in question were not present attending at the trial" inferable from Luther's statement is that they were absent for the purpose of covering up something. As to whether Luther's statements were such as to render it "reasonably doubtful" whether they influenced the jury's verdict, we can only say that, according to the court's findings, "the jury retired to consider their verdict about 9:30 a. m. and stood 10 for the plaintiff and 2 for the defendant until the noon hour. After the noon hour they returned to their jury room and proceeded further to consider their verdict and shortly thereafter returned a verdict in open court in favor of the plaintiff for the sum of $18,000." The record shows that "the first vote was taken just before dinner in the forenoon," and that Luther's statements were made to the jury after the noon hour and just before the vote resulting in a verdict was taken. One of the jurors, P. A. Dorsey, while not confessing that the statements of Luther influenced him in his verdict, did not deny that they did influence him. To the question, "I will ask you whether that (Luther's statements) had any influence on you in relation to your verdict, that is, did it tend to have any influence on you," he responded: "Well, I figured if the railroad company did things that way it did; that if they did that it influenced me." Mr. Dorsey further testified:

"When we first went out, I was in favor of the defendant. I did not think the plaintiff was injured very much. After I heard all that discussion in there, I changed my mind and voted for a verdict of $18,950."

This was $950 more than the final verdict. On cross-examination this juror, among other testimony, said:

"Luther said he believed they could have had those men if they had wanted them. That is all he said about the T. & P. Then he talked about some personal experience he had on the 'Katy,' and of some misconduct he was guilty of in the case. I thought it was strange why those men were not here after he got to talking about it. I wondered why they were not here. Nobody had testified as to why they were not here. The railroad offered no proof explaining their absence. After we got to talking about it in the jury room, I wondered why they were not here. That drew it to my mind, and as I

thought about it, I concluded that from the testimony we had heard, the plaintiff was entitled to recover, and I made my verdict accordingly."

The court found the verdict excessive in the amount of $5,000. That the court thus found the verdict unjust in amount, in the absence of any showing of other reason for a verdict excessive, is a circumstance suggestive of the influence of Luther's statements.

Feeling, as we do, that the findings of fact made by the trial judge leave it reasonably doubtful as to whether Luther's statements had no influence upon the jurors in arriving at their verdict, we recommend that the judgment of the Court of Civil Appeals and that of the district court be reversed, and that the cause be remanded for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.