## SOUTHERN TRACTION CO. v. WILSON.
### (No. 413-3799.)

(Commission of Appeals of Texas, Section B. Oct. 24, 1923.)

**1. Trial ⬅=311—Any verdict agreed to by juror, based on improper evidence received in jury room, is excessive.**

Any verdict of a jury is excessive, where it is agreed to by a juror who bases it in part on improper evidence received in the jury room.

**2. New trial ⬅=140(3)—If reasonably doubtful whether juror was influenced by improper evidence received in jury room, verdict must be set aside.**

If, from the evidence taken by the trial judge on the hearing of a motion for new trial, on the ground of misconduct of the jury, it is reasonably doubtful as to whether a juror was influenced to any extent in arriving at his verdict by discussion of improper evidence in the jury room, the verdict must be set aside.

**3. New trial ⬅=140(3)—Evidence held to show improper influence of juror by improper discussion in jury room requiring verdict to be set aside.**

Where it was sought to set aside a verdict against a traction company in a personal injury

case, on the ground that the jurors had discussed the fees which plaintiff's attorney would receive, evidence *held* to show that it was reasonably doubtful whether such juror had not been influenced, and consequently the verdict will be set aside.

**4. Trial ⬅=217—Jurors should be warned against taking unauthorized view of premises.**

In personal injury cases, jurors should be warned, in the absence of mutual agreement of the parties litigant, to refrain from visiting the scene of the accident or viewing the situation for themselves.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by J. A. Wilson against the Southern Traction Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (241 S. W. 636), and defendant brings error. Reversed and remanded for a new trial, as recommended by the Commission of Appeals.

Sanford & Harris and W. E. Spell, all of Waco, and Templeton, Beall, Williams & Worsham, of Dallas, for plaintiff in error.

Chas. L. Black, of Austin, for defendant in error.

POWELL, J. J. A. Wilson was injured by a car of the Southern Traction Company at the intersection of two of the principal business streets of the city of Waco. He brought suit in the district court of McLennan county for damages, alleging negligent operation of the car which collided with him. In a trial before a jury he was awarded a judgment for $13,550. Upon appeal to the Court of Civil Appeals, the judgment of the trial court was reversed, and the cause remanded to that court for a new trial. That decision of the Court of Civil Appeals was a majority opinion only, as Chief Justice Key vigorously dissented. This reversal was due to an alleged error in the main charge of the court. The Court of Civil Appeals, in that opinion, did not pass upon the assignment of error involving misconduct of the jury, since the case was being reversed anyway. The court merely contented itself at that time by saying that the conduct was "improper." See 187 S. W. 536.

Counsel for Wilson, being dissatisfied with the action of a majority of the Court of Civil Appeals in their ruling upon the alleged error in the charge of the court, applied for and obtained a writ of error from the Supreme Court, which latter court decided the Court of Civil Appeals had erroneously reversed the trial court's judgment so far as the charge of the court was concerned. The Supreme Court proceeded to reverse the judgment of the Court of Civil Appeals, and remanded the case to that court to pass upon the assignment of error involving the alleged

misconduct of the jury. See 111 Tex. 361, 234 S. W. 663.

The Court of Civil Appeals, again considering the case, and this time with reference to the alleged misconduct of the jury, affirmed the judgment of the district court. See 241 S. W. 636.

Counsel for the traction company, believing that the Court of Civil Appeals had committed error in entering judgment last mentioned, applied for and obtained writ of error from the Supreme Court. The case is now before us for examination and recommendation.

The sole question before the Supreme Court at this time is whether or not the district court abused his discretion in overruling the motion for new trial, in view of the alleged misconduct of the jury in the consideration of their verdict. There are but two phases of misconduct included in the application for the writ, although others were before the Court of Civil Appeals. We shall first discuss the assignment of error contained in the application, in which it is alleged that the trial court abused his discretion in not granting a new trial, since it appeared that one of the jurors would never have agreed to a verdict awarding the injured plaintiff as much as $13,550, but for the fact that said juror desired to allow enough recovery to pay Wilson's attorneys their fee and still leave to Wilson himself a certain net amount. In this connection it was alleged that, after the jury had retired to consider its verdict, there was considerable discussion in the jury room as to what part of the judgment the attorneys for Wilson would receive. Some of the jurors thought they would get as much as one-half of the recovery, while others placed the amount at less. At any rate, counsel for the company attached to the motion for a new trial an affidavit by one of the jurors, Moore, to the effect that, "except for the fact that he wanted to provide for Mr. Wilson's attorneys' fees and other expenses in such a manner as to give Mr. Wilson about $7,500, he never would have consented to return a verdict for more than $7,500." We have quoted the concluding words of Moore's affidavit.

Counsel for defendant in error object to a consideration of the aforesaid assignment by this court, because of the fact that the attorneys for the company made no assignment that the verdict so returned was excessive in amount; that the only possible prejudicial result of the discussion of attorneys' fees would be to increase the size of the verdict; that, in the absence of an assignment that the verdict was excessive, the company is in no position to seek relief because of the particular misconduct now under consideration.

[1, 2] We do not think this position is well taken. It is true the record contains no formal assignment attacking the verdict as being excessive. But the very assignment setting up this particular phase of misconduct and its effect upon the juror Moore is very full. It is there in effect alleged that, so far as Moore was concerned, the verdict was excessive and improper; that, but for the introduction of this new evidence into the jury room, Moore's verdict would have been for only $7,500; that this extra amount of more than $6,000 was added because of the improper discussion in the jury room; that therefore the verdict was improper and excessive to that amount. So this assignment does allege that the verdict was excessive, so far as Moore was concerned. It might have been so as to him, and not as to the other jurors. As a matter of fact, the verdict of the jury perhaps was not excessive in law under the facts in the record. But any verdict of a jury is excessive, where it is agreed to by a juror who bases it in part upon improper evidence received in the jury room. We think the assignment in this case, in any event, is sufficient, and that if, from the evidence taken by the trial judge on the hearing of the motion for a new trial, it is reasonably doubtful as to whether or not the juror Moore was influenced, to any extent, in arriving at his verdict, by the discussion relative to the attorneys' fees, the verdict must be set aside.

In the case of Railway Co. v. Gray, 105 Tex. 42, 143 S. W. 606, our Supreme Court, considering a similar situation, laid down the following rule, which is still the law:

"If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside."

This rule has been very recently reaffirmed by both sections of the Commission of Appeals. See Hines v. Parry, 238 S. W. 886; Payne v. Harris, 241 S. W. 1008. The Commission of Appeals has also discussed kindred questions in two other very recent cases. See Lamar v. Railway Co., 248 S. W. 34; Express Co. v. Chandler, 231 S. W. 1085.

Applying the rule laid down by our Supreme Court in the Gray Case, the court itself will set aside a judgment and order a new trial, where all the evidence, considered as a whole, taken by the trial judge on the hearing of the motion for a new trial, leaves it reasonably doubtful to the Supreme Court as to whether or not the improper conduct of the jurors affected the amount of the verdict. The Supreme Court will not look to one portion of the evidence alone, or to another part alone. But it will and should consider the record as a whole upon the point in controversy.

Now, looking to the evidence taken upon this hearing, we may concede, for the purposes of this case, that eleven of the jurors, from their evidence and the agreement as to

their evidence, were not influenced by the discussion of the attorneys' fees in the jury room. But, after carefully reading all the evidence of the juror Moore, given before the trial judge on the hearing of the motion for a new trial, we are forced to the conclusion, to put it very mildly, that it is reasonably doubtful as to whether or not such juror was influenced by said improper discussion. That being true, we feel that the Supreme Court should exercise its authority and set the verdict aside. Under our system· of jurisprudence, parties litigant are entitled to a verdict returned by each of the twelve jurors solely upon the law and the evidence permitted by the court to be introduced upon the trial. If outside matters are discussed in the jury room, and its effect upon the verdict is reasonably doubtful, the doubt should be resolved in favor of keeping jury verdicts free from suspicion and in favor of those against whom the improper conduct was committed. If verdicts of juries are to continue to be respected, as they should be, they must be safeguarded with eternal vigilance from every outside influence of any character.

In this case the evidence of all the jurors who took the stand develops no conflict as to what happened there. The discussion as to attorneys' fees took place. The attitude of Moore as to what amount he was willing to award at different times is also undisputed. So we must look largely to Moore alone, in this particular case, to ascertain whether or not he was influenced by the improper discussion. What does Moore say? It is true that, in certain portions of his testimony before the court, he says he considered the legitimate evidence and the charge of the court in reaching his verdict. But, he never does say that he did not consider the discussion about attorneys' fees also in reaching his verdict. That is very significant. On the other hand, portions of his said testimony show rather clearly that he himself thought the improper discussion in the jury room may have influenced him to a certain extent. Of course, if it influenced him at all, even though the extent be indefinite, his verdict must be set aside. In this connection we quote as follows from his testimony, as given on the hearing itself before the trial judge:

"I cannot say what effect that discussion (about attorneys' fees) had on me. Of course, it was in my mind at the time, but I cannot say that it affected me to a great extent. It is a hard question for me to answer as to whether it affected me or not at all."

Furthermore, upon the hearing, he was confronted, by way of impeachment, with the affidavit he made a few days after he returned his verdict. In that affidavit he stated positively he was influenced by the improper discussion of attorneys' fees. The record shows no fraud or overreaching by the attorney for the company in procuring that affidavit. In testifying about it, Moore does not, in any substantial way, repudiate what he said in it. At most, it seems that his chief objection to it was that the affidavit stated positively that he was influenced by the discussion, when, as a matter of fact, he had thought he had only said he was uncertain about that matter when he made his affidavit, and only had the discussion in mind when arriving at a verdict.

[3] A reading of the entire record leads almost to the conclusion that the juror was improperly influenced. At any rate, he himself was uncertain about it. So are we. It is reasonably doubtful, to say the least of it, whether he was influenced or not by these extraneous matters in arriving at the amount of the verdict he was willing to award. The case should be reversed.

[4] In view of what we have already said, it is not necessary to pass upon the question as to whether or not the other misconduct complained of in the application was such as to require a reversal of the case. Therefore we do not pass upon it. The question will probably not arise upon another trial of this case. It seems that about noon one day, during the progress of the trial, one of the jurors visited the scene of the accident and viewed the situation himself. We will say, however, that this practice should be discouraged by the trial courts and the jurors warned, in the absence of mutual agreement of the parties litigant, to refrain from such practices. It is much better, as a rule, for jurors to get all of their evidence under the guidance of the court and in the presence of the attorneys for both sides.

We regret to reach the conclusion that a reversal of this case is necessary. But the verdicts of our juries must be zealously safeguarded from all outside influence. The courts must maintain the efficiency of our jury system, if that priceless system is to remain the pride of our race. Our appellate courts, for years and years, have been urging trial courts to warn the juries against every kind of improper conduct. Not only so, but to grant new trials promptly when situations of this kind arise. There will be a great saving of time and expense to litigants if the trial courts themselves will adopt the practice of setting verdicts aside promptly when misconduct appears, and its effect upon the jury is reasonably doubtful.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed and the cause remanded to the former for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.