A collision occurred in the city of Wichita Falls between an automobile driven by C. M. Mann, and another car driven by Gordon Cook. Mrs. Pearl Mann, wife of C. M. Mann, was riding with him at the time of the collision. Immediately prior to the accident, Mann was driving his car in a southerly direction on what is known as Gray street, and the collision occurred at a point about the center of Ninth street, which intersected Gray street at right angles thereto, and the car driven by Gordon Cook was traveling in a westerly direction along Ninth street. As a result of the collision, Mann's car was wrecked and his wife sustained serious personal injuries by being violently thrown against the pavement.
Gordon Cook was a minor son of M. M. Cook, and the Ford car which he was driving belonged to the Hamilton-Martin Investment Company, a corporation, for whom M. M. Cook was working at the time. The car had been bought by that company for use in its engineering department, and had been by it turned over to M. M. Cook for use in that department, in which department M. M. Cook was employed, but for no other use. M. M. Cook had kept the car at his home for two or three months prior to the accident, and occasionally Gordon Cook had used it on errands, upon instructions of his mother and with the knowledge and consent of his father. At the time of the accident Gordon Cook was 17 years of age, and two other boys were riding with him when the accident occurred.
This suit was instituted by C. M. Mann and his wife, Mrs. Pearl Mann, against M. M. Cook and the Hamilton-Martin Investment Company, to recover damages for injuries to Mann's car, and for personal injuries sustained by Mrs. Mann, as a result of the collision. The case was tried before a jury, who, in response to special issues, found that Gordon Cook was guilty of negligence in several particulars, which had been alleged by the plaintiffs, and which negligence the jury found was the proximate cause of the collision. The jury further found that Gordon Cook was driving the car with the permission of his father, M. M. Cook, but upon no mission or duty for his father, and that at that time the car was being used by M. M. Cook as a family car, for the pleasure of himself and his family.
Damages in the sum of $500 for injuries sustained by Mrs. Mann and $285 for injury to the plaintiff's car were fixed by the jury. There were further findings of the jury that plaintiffs were likewise guilty of negligence which proximately contributed to the injuries for which damages were claimed. Upon the verdict so returned, judgment was rendered in favor of defendants, and plaintiffs have prosecuted this appeal.
In their pleadings, plaintiffs alleged the negligence of Gordon Cook to be the proximate cause of the injuries, the acts of negligence alleged being the same as found by the jury, and sought to fix liability of the defendants therefor upon allegations that the Hamilton-Martin Investment Company had permitted M. M. Cook, its employee, to keep the Ford car at his home and to use the same for the benefit of himself and family at such times as he might see fit, as well as in the business of the company, and that at the time of the collision Gordon Cook was driving the car with the knowledge and consent of his father and the company.
Since the jury found Gordon Cook guilty of the acts of negligence alleged, appellants are in no position to complain of harmful error in the failure of the court to instruct the jury relative to the requirements of what is known as the statutory law of the road in this state, regulating the conduct of drivers of automobiles, in connection with the further instruction that a breach of such requirements by Gordon Cook would be negligence per se.
By several assignments of error complaint is made of the refusal of the court to grant appellant a new trial, on grounds alleged in their motion therefor, presenting what is alleged to be misconduct of the jury in reaching their verdict. Nine of the jury that returned the verdict were introduced as witnesses and testified at length. The testimony given by those jurors appears in bills of exceptions which cover some 40 pages in the transcript, and was given in answer to many questions propounded on direct and cross examination by the attorneys for both parties. It would unduly extend this opinion to do more than to briefly review such testimony.
In order to properly understand some of the testimony, it is necessary to note the issues submitted to the jury, and the order in which they were presented, to wit:
(1) Whether Gordon Cook was driving the Ford car with the permission of, or on any mission or duty for, his father, M. M. Cook; (2) definitions of negligence and contributory negligence; (3) whether Gordon Cook was guilty of negligence in several particulars specified, which was the proximate cause of the collision; (4) whether or not, at the time of the collision, the Ford car which struck plaintiffs' car was being used by defendant M. M. Cook for the pleasure of himself and family — to all of which questions the jury returned answers in the affirmative; (5) the amount of damages sustained by plaintiff. *Page 574 
Mrs. Pearl Mann, as the result of her injuries, assessed by the jury at $500, and the amount of damages done to plaintiffs' automobile, assessed by the jury at $285; (6) whether or not, at the time and place in question, the Ford car which collided with plaintiffs' car was being used by defendant M. M. Cook as a family car for the pleasure of himself and family, to which the jury answered "Yes": (7) whether or not plaintiffs were guilty of contributory negligence in the several specified particulars alleged in defendant's answer, and embodied in special issues Nos. 2 to 6, requested by defendant Cook, to all of which issues findings were made that plaintiffs were guilty of negligence proximately contributing to the collision.
Five of the jurors were introduced as witnesses for the plaintiffs, all of whom testified, in substance, that after the jury had fixed the amount of plaintiffs' damages a statement was made by some of them that it would make no difference what their findings might be on the issues of contributory negligence, since there had already been a finding of plaintiffs' damages, and that that finding would insure a judgment in plaintiffs' favor, and by reason of that statement, and that but for such statement they would not have agreed to the finding returned on the issue of plaintiffs' contributory negligence. They further testified that from the evidence they believed that plaintiffs had suffered more damages than the jury found: that the statement was made by Bullington, foreman of the jury, that he was personally acquainted with the financial condition of both plaintiff Mann and defendant Cook, and knew that Cook would be unable to pay a large judgment, and that witnesses agreed to the finding on the issues of contributory negligence as an excuse for not allowing plaintiffs more damages.
Four jurors were introduced by defendant, all of whom testified that the jury intended by their verdict to give plaintiffs a right of recovery, and did not know that the finding on contributory negligence would defeat such recovery. Two of those jurors also testified to the statement made in the jury room that their findings of damages would fix plaintiffs' right of recovery, independently of the issue of contributory negligence, and that they would not have agreed to those findings if they had believed that the same would have that effect. Two others of the jurors testified that they did not hear that statement made in the jury room, and all four of them denied making any agreement with respect as to how those special issues should be determined. All four of those jurors testified that they were not influenced by any of the statements made, and that the findings were based solely upon the law and the evidence. In fact, the jurors introduced by the plaintiffs testified on cross-examination that their findings were made under the evidence, but on redirect examination they showed that they were influenced by the statement referred to above. The foreman Bullington admitted that he did state to the jury, in answer to a question by some one of them, that he knew the financial condition of plaintiff Mann and defendant Cook, and that the defendant would be unable to pay a large judgment, if rendered against him.
We will say here, in passing, that perhaps it might be said that the discussion of Cook's financial condition would be harmless error in any event, if the findings of the jury on contributory negligence should be sustained, since, as a result of those findings, plaintiff's could not recover.
Article 2232, Rev.Civ.Statutes of 1925, provides that new trials may be granted on motion for good cause.
Article 2234 reads as follows: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material."
That article of the statute as it now reads was adopted by the Legislature in the codification of 1925, and is the same article as appears in the former codification as article 2021, Vernon's Sayles' Texas Civil Statutes of 1914, except that in the former codification is the following language: "And, if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, in the discretion of the court, be granted."
The only difference in the two codifications is that the words "in the discretion of the court" do not appear in the last codification. We know of no decision holding that such change in the language of the two articles makes any material difference; in other words, that it is not still within the discretion of the court to determine whether or not a new trial should be granted on alleged misconduct of the jury.
In Southern Traction Co. v. Wilson, 254 S.W. 1104, by Section B of the Commission of Appeals, the judgment of the trial court was reversed on account of alleged misconduct of the jury. In the opinion by Justice Powell, the following was said:
"The sole question before the Supreme Court at this time is whether or not the district court abused his discretion in overruling the motion for new trial, in view of the alleged misconduct of the jury in the consideration of their verdict. * * * We think the assignment in this case, in any event, is sufficient, and that if, from the evidence taken by the trial judge on the hearing of the motion for a new trial, it is reasonably doubtful as to whether or not the juror Moore was *Page 575 
influenced, to any extent, in arriving at his verdict, by the discussion relative to the attorney's fees, the verdict must be set aside.
"In the case of Railway Co. v. Gray, 105 Tex. 42, 143 S.W. 606, our Supreme Court, considering a similar situation, laid down the following rule, which is still the law: `If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside.' This rule has been very recently reaffirmed by both sections of the Commission of Appeals. See Hines v. Parry, 238 S.W. 886; Payne v. Harris, 241 S.W. 1008. The Commission of Appeals has also discussed kindred questions in two other very recent cases. See Lamar v. Railway Co., 248 S.W. 34; Express Co. v. Chandler, 231 S.W. 1085.
"Applying the rule laid down by our Supreme Court in the Gray Case, the court itself will set aside a judgment and order a new trial, where all the evidence, considered as a whole, taken by the trial judge on the hearing of the motion for a new trial, leaves it reasonably doubtful to the Supreme Court as to whether or not the improper conduct of the jurors affected the amount of the verdict. The Supreme Court will not look to one portion of the evidence alone, or to another part alone. But it will and should consider the record as a whole upon the point in controversy.
"Now, looking to the evidence taken upon this hearing, we may concede, for the purposes of this case, that 11 of the jurors, from their evidence and the agreement as to their evidence, were not influenced by the discussion of the attorney's fees in the jury room. But, after carefully reading all the evidence of the juror Moore, given before the trial judge on the hearing of the motion for a new trial, we are forced to the conclusion, to put it very mildly, that it is reasonably doubtful as to whether or not such juror was influenced by said improper discussion. That being true, we feel that the Supreme Court should exercise its authority and set the verdict aside."
And in approving the opinion of the Commission of Appeals in that case the Supreme Court said: "We approve the holding of the Commission of Appeals on the question discussed in its opinion."
In the case of Moore v. Ivey (Tex.Com.App.) 277 S.W. 106, the trial court overruled a motion for new trial, one of the grounds for which was alleged misconduct of the jury. An assignment of error to that holding was overruled by the Court of Civil Appeals. 264 S.W. 283. But the conclusions of the trial court and the Court of Civil Appeals on that issue were overruled, and the cause was remanded, by reason of misconduct of the jury in trying the case. The opinion of Justice Nickels, of Section A of the Commission of Appeals, shows an exhaustive review of the decision theretofore rendered bearing upon the question involved. The following is an excerpt from that opinion:
"The determinative rules or principles of law are plain and well established. If, upon a consideration of the whole of the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts. H. 
T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S.W. 606; Southern Traction Co. v. Wilson (Tex.Com.App.) 254 S.W. 1104; Hines v. Parry (Tex.Com.App.)238 S.W. 886. It may be clear that 11 (or a lesser number) of the jurors were not, to any degree, influenced by the improper conduct; yet if it remains reasonably doubtful whether one (or a larger number) was, or was not, influenced, the vice remains and the verdict must be set aside (Southern Traction Co. v. Wilson, supra), because each juror can rightly agree to the verdict only when guided solely by the instructions of the trial judge and the evidence heard in open court. A proper corollary is that, when misconduct is once shown, and there is reasonable doubt as to its effect, that doubt must be resolved against the verdict. Faithful adherence to these principles is essential to the due and orderly administration of the law; infidelity here makes justice doubtful and invites corruption at its source. To the extent that verdicts may be affected or controlled by external or extraneous influence projected into jury rooms, due process of law is mocked, even though its forms be meticulously observed, and government is subverted through the most dangerous and insidious of processes. It results that in every case of alleged misconduct there is an interest which transcends even that of the parties litigant, and which renders apparent hardship immaterial; it becomes the duty of the courts, for the protection of the state and its public, as well as for the purpose of justice in the particular case, to see to it that jury verdicts remain pure, through the striking down of those whose integrity is doubtful."
Appended to that opinion is the approval by the Supreme Court, through Chief Justice Cureton, of the judgment recommended, and with the further approval of "the holding of the Commission of Appeals on the questions discussed in its opinion."
In St. Louis Southwestern Ry. Co. v. Robinson, 285 S.W. 269, 46 A.L.R. 1507, in an opinion by the Commission of Appeals, Section A, the following is said: "Where the evidence taken by the trial court on motion for new trial leaves it reasonably doubtful whether misconduct of the jury has resulted *Page 576 
in injury, the motion should be granted" — citing Moore v. Ivey and several other cases.
Appended to that opinion is the statement of Chief Justice Cureton of the Supreme Court that the judgment recommended by the Commission of Appeals is adopted, with the added statement: "We approve the holding of the Commission of Appeals on the questions discussed in its opinion."
In Bell v. Blackwell, 283 S.W. 765, decided by the Commission of Appeals, Section B, in an opinion by Justice Speer, a judgment of the trial court was reversed on account of improper argument of counsel as to what would constitute mental capacity sufficient to make a valid will, the effect of which was contrary to the definition of that term as given in the court's charge. One of the points made by defendant in error on that appeal was as follows: "Whether plaintiffs in error were prejudiced by the alleged improper argument involves an inquiry of fact and a finding of the Court of Civil Appeals thereon is final." And after a discussion of the following decisions: M., K. T. Ry. Co. v. Hanning,91 Tex. 3-17, 43 S.W. 508: Houston, etc., Co. v. Gray. 105 Tex. 42,143 S.W. 606; Hines v. Parry (Tex.Com.App.) 238 S.W. 886; Payne v. Harris (Tex.Com.App.) 241 S.W. 100S; So. Traction Co. v. Wilson (Tex.Com.App.)254 S.W. 1104; Gulf, etc., Co. v. Harvey (Tex.Com.App.) 276 S.W. 895: Moore v. Ivey (Tex.Com.App.) 277 S.W. 106; San Antonio, etc., Co. v. Alexander (Tex.Com.App.) 280 S.W. 753 — this was said:
"These authorities are decisive against the contention that, to authorize a reversal on account of error, there must be a finding of prejudice. On the contrary, they firmly establish the rule to be that, unless it affirmatively appears no prejudice resulted, or that there was no reasonable doubt of the harmless effect of the error, a reversal must follow. * * * So, that, independent of any other consideration, it should be held that the finding of the trial court or of the court of Civil Appeals even as a fact, that prejudice is or is not shown by a certain error, is not a judgment upon the facts of the case to such extent as to preclude the Supreme Court from passing upon the question of law reviewing the error. * * * The real rule is that, where error is of such a nature under all the circumstances as probably to have prejudiced the complainant, reversal should follow as matter of law. See San Antonio, etc., Co. v. Alexander (Tex.Com.App.) 280 S.W. 753, and authorities there cited."
And it is also pointed out in that opinion that the same rule applies in cases of improper argument as on questions of misconduct of the jury and the admission of improper evidence.
In Emberlin v. Railway Co., 284 S.W. 539, by the Commission of Appeals, Section A, opinion by Justice Bishop, an assignment addressed to improper argument is disposed of in the following language:
"The rules for the district courts provide that in arguments to the jury `counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel,' and that `the court will not be required to wait for objections to be made when the rules as to arguments are violated.' When counsel violates this rule, he does so at his peril. The litigants are entitled to a fair and impartial trial, and, should it appear that by reason of the violation of this rule the rights of the losing party have been prejudiced, it is the duty of the trial court to grant a new trial. When, in motion for new trial, complaint is made of argument in violation of this rule, the motion should not be granted on such complaint, unless the argument, under all the facts and circumstances in the ease, was calculated to prejudice the rights of the complaining party. If it was, injury must be presumed, for a fair trial cannot be said to have been awarded when improper argument calculated to prejudice rights has been indulged in. The question as to whether such argument was calculated to prejudice is left to the reasonable discretion of the trial court in passing upon the motion, and when, in the exercise of such discretion, the trial court has determined this question, an appellate court is not warranted in setting aside its holding. It is only when from the record on appeal, it is clear that argument in violation of this rule was calculated to prejudice the rights of the party complaining that an appellate court is authorized to overrule a contrary holding by the trial court on this question. Unless it clearly appears that the trial court has abused its discretion, its holding must stand."
However, in Subb Diggs Co. v. Bell, 293 S.W. 808, by the same section of the Commission of Appeals, in an opinion by the same Justice, the opinion in the case of Emberlin v. Railway Co., 284 S.W. 539, was construed as being in perfect accord with the opinion of Justice Speer in Bell v. Blackwell, supra, with the following statement:
"The language used by us in the case of Emberlin v. Railway Co., supra, should not be taken as a holding that the question as to whether the record leaves it reasonably doubtful whether harm has resulted from improper argument is one of fact. The discretion conferred upon the trial court in passing on a motion for new trial is not different from that conferred upon the appellate court in reviewing the holding made on appeal. If the trial court holds that under all the facts and circumstances in the case there exists no reasonable doubt as to whether harm has resulted from improper argument, and it appears from the record on appeal that under all the facts and circumstances such doubt does exist, the holding is erroneous." *Page 577 
In I. G. N. Ry. Co. v. Cooper, 1 S.W.2d 578, in an opinion rendered by the Commission of Appeals, Section A, the following was said:
"It is the settled law of this state that if, upon a consideration of the whole or the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of the discretion by the trial Judge, and reversal becomes the duty of appellate courts.' "
Following that quotation is the citation of all the decisions referred to above and several others. And it appears that the only reason why the judgment of the trial court was not reversed by reason of alleged misconduct of the jury was the fact that the plaintiff had filed a remittitur of $7,500, which covered any possible portion of the judgment that was tainted by misconduct of the jury.
In Bradley v. T. P. Ry. Co., 1 S.W.2d 861, by the Commission of Appeals, Section B, in an opinion by Justice Leddy, it was held that a verdict of the Jury cannot be impeached by a showing that one or more of the jurors misunderstood, misapplied, or disobeyed the court's charge, unless there is evidence of an overt act of misconduct, which induced that result.
It is our conclusion that the testimony given by the jurors upon the hearing of the motion for new trial conclusively shows that at least some seven or eight of the Jurors intended to render a verdict in such a manner as to insure plaintiffs a recovery; that, after they had made findings of damages sustained by the plaintiffs, the statement was made in the jury room that it mattered not what their finding might be on the issue of plaintiff's contributory negligence, such finding would not preclude a recovery by the plaintiff, since they had already passed on the issue of damages, and that by reason of such statement they did not thoroughly consider the issues of contributory negligence, and would not have made the findings that were returned on those issues, if those statements had not been made. The testimony so taken further shows conclusively that a statement was made by one of the jurors that he knew the financial condition of both the plaintiff Mann and defendant Cook, that defendant Cook would not be able to satisfy a large judgment, and that by reason of that statement some of the jurors agreed to a finding of plaintiffs' damages in a smaller sum than he would have been willing to find in the absence of such statement.
It is our conclusion that the statements so made in the jury room were "overt acts," within the meaning of the decision last cited, and were reasonably calculated to cause, and probably did cause, the rendition of an improper verdict. At all events, we are unable to say that the misconduct pointed out did not operate to the prejudice of appellants.
Appellee has presented cross-assignments of error to the action of the court in overruling a general demurrer to the plaintiffs' petition, and in failing to instruct a verdict in defendant's favor after all the evidence was heard. It is pointed out that in plaintiffs' petition there were no allegations that at the time of the accident the Ford car was being used by defendant M. M. Cook as a family car, for the pleasure of himself and family, as found by the jury, but that the sole theory upon which it was sought to hold Cook liable was upon the allegation that his son, Gordon Cook, was driving the car with the consent and permission of defendant Cook, as found by the jury. Many authorities are cited by appellee to support that contention; that the father is not liable for the negligence of the son, unless the tort complained of was committed at the direction of the parent, express or implied, within the scope of the duties imposed upon the son by the parent; in other words, that mere permission of the father is not sufficient to hold him liable for a tort committed by the son in the use of the automobile for his own pleasure. The authorities cited include, among many others, Chandler v. Deaton,37 Tex. 406; Ritter v. Thibodeaux (Tex.Civ.App.) 41 S.W. 492; Klapproth v. Smith, 144 S.W. 688, by this court; Traham v. Smith (Tex.Civ.App.)239 S.W. 345; Hays v. Hogan, 273 Mo. 1, 200 S.W. 286, L.R.A. 1918C, 715, and notes to that case appearing in Ann.Cas. 1918E, page 1127.
In the first place, while there was not specific allegation that M. M. Cook was at the time of the accident using the Ford car for the benefit and pleasure of himself and family, there was an allegation that the Hamilton-Martin Investment Company had given to M. M. Cook its permission to so use it. Under such circumstances, we do not believe that a general demurrer should have been sustained to the petition, even though it should he said that M. M. Cook could not be held liable, in the absence of a showing that he was keeping the car for the use and pleasure of his family. We believe that a judgment against Cook could be sustained upon the theory of principal and agent; in other words, that, if M. M. Cook knowingly consented for his son to drive the car on a mission of business or pleasure of the son only, the son thereby became his agent, since it is the duty of a father to provide for his minor child, and, if he places in the child's control a dangerous instrument in the use of which a tort is committed, resulting in injury to others, he is in no position either in law or equity to complain that his act in thus placing the dangerous machine in the hands of his child was not the primary and procuring cause of the injury, and that he himself is not liable *Page 578 
therefor; the injured party being without remedy against the legally irresponsible child. The doctrine that he who trusts most must suffer most, we believe is applicable here.
We shall not undertake a discussion of the many authorities which we believe support our conclusion on this question. The opinion of this court in Cohen v. Hill, 286 S.W. 661, in which a writ of error to the Supreme Court was dismissed for want of jurisdiction, shows a collation and discussion of many conflicting authorities throughout the United States on what is known as the family purpose doctrine. Our decision in that case supports our present conclusion upon the question now under discussion.
We conclude that the judgment of the trial court should he reversed for misconduct of the jury, notwithstanding the implied finding of the trial court that the same did not operate to the prejudice of the appellant. Accordingly the judgment of the trial court, as between plaintiffs and defendant M. M. Cook, is reversed, and the cause is remanded as to them; but the judgment denying plaintiffs any recovery against the defendant Hamilton-Martin Investment Company is affirmed, since the plaintiffs failed to make out a cause of action against that defendant, and since no complaint is made here in appellant's brief of that portion of the judgment. It is stated by counsel for appellees that the trial court instructed a verdict in favor of the Hamilton-Martin Investment Company, and, although the record does not show that such was true, appellants do not controvert the statement.