## WHEAT et al. v. LANCASTER et al. (No. 115.)

(Court of Civil Appeals of Texas. Eastland. April 2, 1926.)

1. **Trial ⬅⟹355(1) — Where it is doubtful whether answers of jury to special issues sustain judgment, better practice is to declare mistrial.**

Where it is doubtful whether answers of jury to special issues are sufficient basis for judgment, better practice is to declare mistrial, instead of rendering judgment.

2. **Trial ⬅⟹304 — Statements of jurors, made from personal experience and observation as to character of railroad crossing at which accident occurred, held misconduct requiring reversal, notwithstanding jurors testified they were not influenced thereby.**

Statements of jurors as to character of railroad crossing at which accident occurred and distance at which train could be seen before arriving at crossing, made from personal experience and observation before answering special issues, *held* misconduct requiring reversal, notwithstanding jurors testified that they were not influenced thereby.

3. **New trial ⬅⟹56.**

Any doubt whether misconduct of jury affected verdict must be resolved against verdict and new trial granted.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by Acquilla Wheat and others against L. L. Lancaster and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

W. J. Barnes and Gilvie Hubbard, both of Eastland, and V. L. Shurtleff, of Breckenridge, for appellants.

Conner & McRae, of Eastland, and H. C. Shropshire, of Weatherford, for appellees.

LITTLER, J. This suit was filed by appellant for herself and as next friend to her three minor children, against the receivers of the Texas & Pacific Railway Company, to recover $95,000 damages for the death of Joseph T. Wheat, alleged to have been caused by the negligence of the defendants, resulting in the death of Joseph T. Wheat at a public crossing west of Cisco, Tex. It is alleged that the negligence consisted of defendants' train approaching said crossing at a high rate of speed and without blowing whistle or ringing the bell in the manner required by law, and by failure to maintain a watchman or to equip said crossing with modern appliances to warn persons about to approach said crossing. The defendants answered by general and special exceptions, general denial, and that the deceased was guilty of contributory negligence in approaching said crossing and in failing to reduce the speed of his automobile to six miles per hour as required by law. The case was tried before a jury, and was submitted on the following special issues, which were answered by the jury as indicated:

Special issue No. 1: Did the operatives of the engine, which struck the car occupied by Joseph T. Wheat at the crossing in question, cause the whistle on said train to blow at least 80 rods before reaching the crossing in question? Answer yes or no. Answer: Yes.

Special issue No. 3: Did the operatives of the engine, which struck the car driven by Joseph T. Wheat at the crossing in question, cause the bell on said engine to ring at least 80 rods before reaching said crossing and keep same ringing until said train had reached said crossing? Answer yes or no. Answer: No.

Special issue No. 4: If you answer interrogatory No. 3 in the negative, then answer: Was the failure to ring bell and keep it ringing until the train had reached the crossing a proximate.

cause of the death of said Joseph T. Wheat? Answer yes or no. Answer: ———.

Special issue No. 5: Was there maintained at the crossing where Joseph T. Wheat was killed an electric bell to warn persons about to use said crossing of the approach of a train? Answer yes or no. Answer: No.

Special issue No. 6: If you have answered interrogatory No. 5 in the negative, then answer: Was the failure to maintain such appliance negligence as that term has been hereinbefore defined? Answer yes or no. Answer: No.

Special issue No. 7: If in answer to the preceding interrogatory you answer "Yes," then answer: Was such negligence, if any, a proximate cause of the death of the said Joseph T. Wheat? Answer yes or no. Answer: ———.

In determining the measure of damages, if any, you may take into consideration the pecuniary aid, if any, that the plaintiffs had reasonable expectation of receiving from the said Joseph T. Wheat had he lived, but you will not allow them anything for any grief or sorrow on account of the death of said Joseph T. Wheat, nor the loss of his society, affection or companionship, but the term "pecuniary aid" may include care and training given by the father to the minor children.

Now, bearing in mind the foregoing definitions, you will answer the following questions:

Special issue No. 8: What amount of money, if paid now in cash, will reasonably compensate the plaintiff Acquilla Wheat for the damages she has sustained, if any, occasioned by the death of Joseph T. Wheat? Answer in dollars and cents. Answer: ———.

Special issue No. 9: What amount of money, if paid now in cash, will reasonably compensate Bernia Wheat for the damages she has sustained, if any, occasioned by the death of said Joseph T. Wheat? Answer in dollars and cents.

Special issue No. 10: What amount of money, if paid now in cash, will reasonably compensate the plaintiff Waldean Wheat for damages sustained, if any, occasioned by the death of Joseph T. Wheat? Answer in dollars and cents.

Special issue No. 11: What amount of money, if paid now in cash, will reasonably compensate the plaintiff Bobbie Jo Wheat for damages sustained, if any, occasioned by the death of Joseph T. Wheat? Answer in dollars and cents. Answer: ———.

The following special issues were requested by defendant:

Special issue No. 1: Did the deceased, in approaching said railroad crossing before attempting to make said crossing at some point not nearer than 30 feet of the track, reduce the speed of his automobile to a speed not to exceed six miles per hour? Answer yes or no. Answer: No.

Special issue No. 2: If you have answered special issue No. 1 requested by the defendant in the negative, then you will answer: Was the failure of the deceased, Joseph T. Wheat, as he approached said crossing and before attempting to make said crossing, and at some point not nearer than 30 feet of the track, to reduce the speed of his automobile to a speed not to exceed six miles per hour before making said crossing the proximate cause of his injury and death? Answer yes or no. Answer: No.

Special issue No. 3: Did the deceased, Joseph T. Wheat, exercise ordinary care and prudence to ascertain whether or not a train was approaching at the time he drove his automobile upon said crossing and attempted to cross said railroad tracks? Answer yes or no. Answer: ———.

Special issue No. 4: Did the deceased, Joseph T. Wheat, know, or by the exercise of ordinary care and prudence could he have known, of the approach of the train in time to have stopped his automobile, and thereby have prevented the accident? Answer yes or no. Answer: ———.

Special issue No. 5: If you have answered special issue No. 4 requested by the defendant in the affirmative, then answer: Was the failure of the said Joseph T. Wheat, deceased, to see the approach of the train and stop his automobile in time to have prevented the accident, negligence on his part which contributed to cause his injuries and death? Answer yes or no. Answer: Yes.

Special issue No. 7: Was the deceased, Joseph T. Wheat, guilty of negligence in going upon said railroad crossing and railroad track at the time and place of the accident in the manner and way he did, which contributed to his injuries and death? Answer yes or no. Answer: Yes.

Special issue No. 8: Were the brakes on the automobile which the deceased was driving at the time and place of the accident defective, and did such brakes fail to work and prevent the deceased from stopping his automobile in time to have prevented the accident? Answer: ———.

Special issue No. 10: Did the deceased, Joseph T. Wheat, at the time and place of the accident, approach said railroad crossing and track at a greater rate of speed than a person of ordinary prudence and care would have approached the same under the same or similar circumstances? Answer yes or no. Answer: Yes.

Special issue no. 11: If you have answered special issue No. 10, requested by the defendant, in the affirmative, then you will answer this following question: Was the act of the deceased in approaching said crossing at a greater rate of speed than a person of ordinary prudence and care, under the same or similar circumstances, would have approached said crossing, negligence on his part proximately resulting in his injuries and death? Answer yes or no. Answer: ———.

The court, upon the findings of the jury, entered judgment in favor of the defendants.

Appellants base their appeal upon three assignments of error:

No. 1. The court erred in rendering judgment for the defendants upon the answers returned by the jury on the special issues submitted to them by the court upon the trial of this cause, for the reason that said answers are insufficient to form the basis of a judgment.

No. 2. The court erred in failing and refusing to declare a mistrial in said cause, because the answers returned by the jury to the special issues submitted to them are insufficient to form the basis of a judgment.

No. 3. The court erred in failing to grant a new trial because the jury were guilty of misconduct, in that after said cause was submitted to them they received evidence,

(284 S.W.)

relating to said cause and not introduced at the trial and of a nature prejudicial to the rights of plaintiffs.

It will be observed from the questions answered by the jury that they found as a fact that the operators in charge of defendants' train blew the whistle at least 80 rods before approaching the crossing; that it was not negligence for the defendant in failing to keep the safety appliances at the crossing; that it was contributory negligence on the part of the deceased to fail to see the approach of the train and stop his automobile in time to have prevented the accident; that deceased was guilty of negligence which contributed to his injury and death in going upon the crossing at the time and in the manner in which he did; that the deceased was guilty of contributory negligence in approaching railroad crossing and track at a greater rate of speed than a person of ordinary prudence and care would have done.

The only finding of the jury upon which contributory negligence could be predicated was in answer to special issue No. 5, above copied. It will be observed that the jury were supposed to answer this issue only in the event special issue No. 4 was answered in the affirmative. The jury failed to agree upon the answer to special issue No. 4, and therefore should not have answered special issue No. 5, as an affirmative answer to said special issue No. 4 was a necessary predicate for an answer to special issue No. 5.

[1] It is therefore doubtful whether the answers of the jury were a sufficient predicate for a judgment in the case. Under the circumstances, the better practice would have been for the court to have declared a mistrial, instead of rendering a judgment. But a decision of this question is probably unnecessary in view of our determination that misconduct of the jury was shown.

[2] The only other question to be decided by this court is the alleged misconduct of the jury after retiring to consider their verdict. It is alleged that one of the jurymen brought a dictionary into the jury room for the purpose of giving to the jury the meaning of the word "approximate." It is also alleged that one of the jury stated while in the jury room that he had crossed the same crossing many a time, and that a train could be seen at quite a distance from crossing. Four members of the jury were placed upon the stand, and their evidence showed conclusively that said juror did bring a dictionary in to the jury room, but that the jury was of the opinion that they should take the meaning of the word "approximate" as given by the court, and that they did so, although they were unable to determine the true meaning of the word and for that reason could not answer the questions as to approximate cause of the death of the deceased. Four of the jurors were placed on the stand, and the undisputed testimony shows that several of the jury, perhaps three or four, stated in the jury room that they were well acquainted with the crossing; that it was an ordinary crossing. And two of the jury testified that one of the jurymen, Ed T. Cox, made the statement that a train could be seen some distance before arriving at the crossing. The evidence further shows that these remarks were made before the jury had answered the questions which they afterwards turned into court.

[3] While it is true that each of the witnesses testified that they were not influenced by any of the remarks made in the jury room, yet the remarks made were of such a nature that we are unable to say that they did not have influence on the jury in answering the question, and if there is any doubt in the matter, it is the duty of this court to waive that doubt in favor of appellants' motion for a new trial.

The case of Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, in passing upon a case of misconduct of the jury, used the following language:

"Where reasonably doubtful whether improper conduct of jury affected verdict, appellate court required to reverse, where trial court abused discretion in denying new trial for misconduct of jury.

"If, upon a consideration of the whole of the pertinent record, it is reasonably doubtful whether improper conduct of jury affected amount of verdict or decision of any other material issue, verdict should be set aside by trial judge; and, if a new trial is not granted, there is an abuse of discretion by trial judge, and reversal becomes duty of appellate court."

The following cases were cited by Judge Nickels in the above case: H. & T. C. Ry. Co. v. Gray, 105 Tex. page 42, 143 S. W. 606; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; and Hines v. Parry (Tex. Com. App.) 238 S. W. 886.

We therefore conclude that the misconduct of the jury is sufficient to raise a doubt as to whether or not it had any effect on the jury in arriving at their verdict, and therefore the verdict should be set aside and the cause remanded for a new trial.

Reversed and remanded.