### GREAT WEST MILL & ELEVATOR CO. v. HESS. (No. 2583.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 20, 1926. Rehearing Denied Feb. 24, 1926.)

1. **Master and servant** ☞287(1)—**Negligence in requiring lifting of flour sacks without assistance held for jury.**

Evidence *held* to present question for jury, whether employer was negligent in requiring employee to load sacks of flour in manner directed without assistance.

2. **Evidence** ☞471(3).

Employee's testimony that loading flour required great exertion and was a great strain *held* not improper as stating conclusion.

3. **Appeal and error** ☞1048(3).

Admitting leading questions as to whether employee had suffered great strain in placing sacks on truck *held* not reversible error.

4. **Evidence** ☞127(2).

Testimony that employee on day of injury complained of suffering pain *held* properly admitted.

5. **Damages** ☞166(2)—**Testimony of doctor, who examined employee at time of injury, relating to examination made at later date, held properly admitted.**

In action by employee for injuries, testimony of doctor, who examined employee at time of injury, relating to examination made at later date, *held* properly admitted as tending to show whether injuries were temporary or permanent.

6. **Appeal and error** ☞1033(3).

Appellant cannot complain of testimony erroneously admitted, but favorable to it.

7. **Master and servant** ☞401 — **Employer, within Workmen's Compensation Act, must plead and prove that he subscribed to act to render defenses of contributory negligence or assumption of risk available (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1).**

For employer, amenable to terms of Workmen's Compensation Act, to avail itself of defense of contributory negligence or assumption of risk, it must, in view of Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1, affirmatively plead and prove that it was a subscriber to the act.

8. **Master and servant** ☞356 — **Refusing to submit question whether employee's injuries were superinduced by operation held proper, where employer, amenable to Workmen's Compensation Act, was not subscriber (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.).**

In action by employee for injuries, refusing to submit to jury whether plaintiff's injuries were superinduced by an operation *held* proper, where employer, amenable to Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), was, by failing to plead and prove that he was subscriber thereunder, precluded from availing itself of defense of contributory negligence.

9. **Trial** ☞256(12)—**Instruction defining contributing proximate cause held not subject to objection that it failed to include element that employer reasonably contemplated result of contributing proximate cause, where plaintiff requested no further definition.**

Instruction defining contributing proximate cause *held* not objectionable, in failing to include element that employer reasonably contemplated result of such contributing proximate cause, in absence of request for further definition of term.

10. **Master and servant** ☞356.

Finding of employee's negligence *held* not inconsistent with judgment for plaintiff, where employer, subject to Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), did not show compliance therewith.

11. **New trial** ☞44(3).

Discussion by jurors as to whether employer carried insurance and amount of attorney fees injured employee must pay *held* misconduct warranting new trial.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by E. L. Hess against the Great West Mill & Elevator Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Madden, Adkins & Pipkin, of Amarillo, for appellant.

L. C. Barrett and F. P. Works, both of Amarillo, for appellee.

JACKSON, J. This suit was instituted by plaintiff, E. L. Hess, against the Great West Mill & Elevator Company, a corporation, defendant, to recover damages in the sum of $15,000 for personal injuries alleged to have been sustained by him while in the employment of defendant.

Plaintiff alleges that on or about April 25, 1924, while in the employ of defendant, and in discharge of his regular duties, placing sacks of flour weighing 200 pounds each, 3 sacks high, upon trucks, which was the usual and customary number of such sacks for one man to load in such manner, he was directed by defendant's foreman to load said 200-pound sacks on said trucks, one upon the other, in stacks 4 sacks high; that it required the lifting of the fourth sack to a height of about 5 feet above the floor on which he stood, and necessitated great and unusual exertion, and in lifting the fourth sack to its position he suffered internal injuries on the right side of his abdomen, which produced a rupture, causing him great pain and suffering in body and mind, which injuries he is unable to better describe; that he was required to do the work alone, which rendered it necessary to place his body in a severe strain and overexert himself, and was the proximate cause of his injuries; that the defendant knew that stacking the sacks upon the trucks in this manner was work too heavy to be done by one person, and this was the only instance, within the knowledge of plaintiff, that it had required one man to stack said 200-pound sacks, 4 high, one upon the other; that after this injury he was treated by the doctors of the defendant for several days, and until said physicians represented to him that he had sufficiently recovered to perform light work without injury; that the defendant was advised that he could only do light work, and, relying on the representations of said physicians, and the defendant requiring him to do light work only, he returned to his duties and was given lighter work for about 2 weeks, and was then directed by his foreman to assist another employee to stack sacks weighing 100 pounds each, one upon the other, 8 high, which required lifting some of the sacks to a height of 7 feet, and doing this work caused plaintiff great strain and exertion, which produced additional injuries to the original injury, which additional injuries was the proximate result of the overexertion required in stacking the 100-pound sacks; that he was not able to do such work, all of which the defendant and its foreman knew,

or by the exercise of ordinary care should have known; that defendant was negligent in requiring plaintiff to stack the 200-pound sacks as directed without help, negligent in requiring him to assist in stacking the 100-pound sacks as directed after his first injury, and negligent in not warning him of the danger in each instance, as he was comparatively inexperienced in such work; that prior to his injuries he was a strong, able-bodied man, had never suffered any serious bodily ailment, but, several years before, had undergone an operation for appendicitis, from which he had entirely recovered, and prior to his injuries his earning capacity was about $90 a month, but had been reduced by such injuries to about $50 a month, and that he was 27 years old, with a life expectancy of 37 years; that his life expectancy had been reduced by his injuries, which were permanent; that the defendant had in its employ continuously more than three persons, but was not a subscriber for insurance under the Workmen's Compensation Act of Texas.

Defendant answered by general and special demurrers, general denial, and specially denied that it had required plaintiff to stack the 200-pound sacks of flour in the manner alleged without furnishing him assistance, and pleaded that plaintiff was a mature and able-bodied man, so far as it knew, and of ordinary sense, and the work in which he was engaged was simple and did not call for special skill, training, or warning, and that, if he undertook to perform the work in the manner alleged, and was injured thereby, it was due solely to his own negligence, without the intervention of any negligence upon the part of the defendant, and without any direction from it, and of his own volition, when he knew, or should have known, in the exercise of ordinary care for his own safety, that he could not stack said 200-pound sacks, 4 high, without assistance; that the size and weight of the sacks and the difficulty of handling them were matters that were open and obvious, and such acts and conduct upon his part were negligence, which negligence was the proximate cause of his injuries; that the plaintiff represented himself to be sound and fully able to do the work which his employment generally required, and did not inform the defendant of having undergone an operation for appendicitis, and it knew nothing of such condition when it employed him, but, with full knowledge of his own physical weakness, undertook to do the work, which was too heavy, without being so directed, which was negligence upon his part and the proximate cause of his injury; that the defendant, having become acquainted with plaintiff's condition at the time he returned to its employ, gave him light work such as he stated he could do without injury to himself, and he made no complaint of the character of work assigned to him on June 10, 1924, when he claims to have received his

additional injuries, and he was negligent in undertaking to do work too heavy and which he was not directed to do by the defendant, and was the judge of such work as he was able to do. The defendant also specially pleaded that plaintiff had executed a release to it for all damages sustained by him.

Both parties filed supplemental pleadings, but we deem it unnecessary to make a statement of the matters therein alleged.

Upon the answers of the jury to special issues submitted, the court rendered judgment against the defendant, who is appellant herein, and in favor of plaintiff, who is appellee, for the sum of $7,500.

The first four assignments present, as error, the action of the trial court in refusing to give the requested instruction directing the jury to return a verdict for appellant, because of the insufficiency of the testimony to authorize a judgment for appellee.

The record shows, without contradiction, that appellee was 27 years old, was in good health, and had recovered entirely, so far as he knew, from the effects of the operation he had undergone for appendicitis; that he had been performing various kinds of physical labor of a character to warrant him in believing that his recovery was complete; that he was directed by the foreman to do the work of stacking the 200-pound sacks of flour on the trucks, one upon the other, 4 high, by himself; that this was exceedingly heavy work and required great strength and exertion to perform it.

The testimony tends to show that it was usual and customary to require an employee without assistance to stack such 200-pound sacks upon the trucks, one upon the other, 3 high only, and that it was not usual and ordinary to require one man to load such sacks on the trucks, one upon the other, 4 high; that, while appellee had been working for appellant in various capacities as a laborer for about 2 months at the time of the injury, he had never been required to place the sacks, one upon another, 4 high, and that, so far as he knew, no other employee had ever been required to do so; that in placing the fourth sack in its position upon the stack he was injured; that he was doing this work under the observation of the foreman and that the exertion required to do the work was noticed by his colaborers, and could have been seen by the foreman; that thereafter he was treated for said injury by appellant's physicians, and after an absence from his employment for about 2 weeks, he was advised that he could return, provided he was permitted to do light work, and that appellant was informed of these facts and of his condition and gave him light work, in which he engaged for about 2 weeks, at which time he was directed by the foreman to assist another employee in stacking 100-pound sacks, 8 sacks high, and in doing this work he sustained an additional injury to the original injury.

[1] This testimony, with other circumstances in the record, was sufficient to present, as an issue of fact, appellant's negligence for the determination of the jury, and these assignments cannot be sustained. Rice v. Garrett (Tex. Civ. App.) 194 S. W. 667, and authorities cited; Texas Employers' Ins. Ass'n v. Jiminez (Tex. Civ. App.) 267 S. W. 752.

[2] Appellant, by its fifth assignment, urges, as error, the action of the court in permitting appellee to testify to the effect that placing the fourth 200-pound sack in position on the trucks required much exertion and was a great strain, over the objection that the witness was not qualified to so testify, and was merely stating a conclusion as to an awful strain. It was not reversible error to permit this testimony over the objection made.

[3] The sixth assignment assails, as error, the action of the court in permitting the same witness to give similar testimony relative to stacking the 100-pound sacks, 8 sacks high, over the same objection, with the additional objection thereto that the questions were leading and suggestive and an invasion of the province of the jury. The record discloses that appellee was, from his experience, qualified to state the matters to which he testified, and sufficiently detailed the facts upon which he based his statements, and, in view of the record and the circumstances and conditions under which the work was performed, it was competent for the witness to give this testimony. The questions as propounded were clearly leading, but, in view of the record, would not necessitate a reversal. Dunlap Hardware Co. v. E. F. Elmburg Co. (Tex. Civ. App.) 252 S. W. 1098.

[4] Appellant, by several assignments, assails, as error, the action of the court in permitting testimony to the effect that appellee, on the days on which the injuries are alleged to have occurred, and while still at work, complained of suffering pain by reason of such injuries. These assignments are overruled. Lumbermen's Reciprocal Association v. Adcock et al. (Tex. Civ. App.) 244 S. W. 645; Trinity & B. V. Ry. Co. v. Carpenter (Tex. Civ. App.) 132 S. W. 837; South Texas Telephone Co. v. Tabb, 114 S. W. 448, 52 Tex. Civ. App. 213; St. Louis S. W. Ry. Co. v. Brown, 69 S. W. 1010, 30 Tex. Civ. App. 57; Gulf, C. & S. F. Ry. Co. v. Bell, 58 S. W. 614, 24 Tex. Civ. App. 579; Texas & Pacific Ry. Co. v. Barron, 14 S. W. 698, 78 Tex. 421.

[5, 6] Appellant, by its eleventh assignment, challenges, as error, the ruling of the court in permitting Dr. M. B. Harris, after he testified to having examined appellee on the date of the second alleged injury, and detailing the conditions he found on said date, to further state, over its objection that the testimony was irrelevant and immaterial, and no proper basis had been laid for admitting testimony of such comparison, that he had again examined him about a week before the trial, and that on such last examination

he did not find the acute inflammation that he found on the first examination, but did find that there was still a weak abdominal wall.

The record fails to disclose that appellee had sustained any additional injury to, or that there had been any aggravation of, the injuries already received between the dates of these two examinations by the physician; and it was competent evidence tending to show whether such injuries were temporary or permanent. Appellant could in no event complain, because this testimony was favorable to it rather than to appellee.

The other assignments urged to the admission of testimony are disposed of by what has heretofore been said, and are overruled.

Appellant, by numerous assignments, presents as error, the action of the trial court in refusing to submit to the jury, either in his main charge or in the special charges requested, the issues of appellee's negligence as the proximate cause of his injuries, because such issues were pleaded, raised by the testimony, and constituted its affirmative defense.

Appellee alleged that appellant had in its employ more than three persons, and was not a subscriber for insurance under the Workmen's Compensation Act of Texas; and the testimony shows that appellant had more than the necessary number of employees to make it amenable to the terms of said Compensation Law.

Appellant failed to plead or prove that it was a subscriber under the Compensation Act, and, in order to avail itself of the defense of contributory negligence or assumed risk upon the part of appellee, it was required to affirmatively plead and prove that it was such subscriber. Pullman Co. v. Ransaw (Tex. Com. App.) 254 S. W. 763; Breckenridge Ice & Cold Storage Co. v. Hutchens (Tex. Civ. App.) 260 S. W. 684; Texas Utilities Co. v. Clark (Tex. Civ. App.) 269 S. W. 903.

Article 5246—1, Vernon's Ann. Civ. Stat. Supp. 1918, affirmatively provides that, in an action for damages for personal injuries sustained by an employee in the course of his employment—

"it shall not be a defense, * * * that the employé was guilty of contributory negligence," or "that the employé had assumed the risk * * * incident to his employment."

In Middleton v. Texas Power & Light Co., 185 S. W. 556, 108 Tex. 96, Chief Justice Phillips, for the Supreme Court, says:

"As to employers, it is clear that no fundamental right is invaded. The act leaves them free to adopt its plan of compensation, or remain ungoverned by it. The consequence attached to their not consenting to it is the denial of the right, existing in common-law actions, to interpose the common-law defenses of fellow servant, assumed risk, and contributory negligence in suits for * * * damages for personal injuries suffered by their employees in the course of their employment."

"To an employer, not a subscriber, under the Workmen's Compensation Act, the common-law defenses of contributory negligence and assumed risk are abolished." Texas Utilities Co. v. Clark, supra, and authorities cited.

[8] Appellant contends that the court committed error in refusing its requested issues submitting to the jury whether appellee's injuries were superinduced by the operation for appendicitis which he had undergone, and whether he would have sustained such injuries but for said operation, and whether such operation was the sole or a contributing cause to his injuries. These issues all involve the question of the contributory negligence of appellee (Miller's Indemnity Underwriters v. Schrieber et al. [Tex. Civ. App.] 240 S. W. 963; G., H. & S. A. Ry. Co. v. Bonn, 99 S. W. 413, 44 Tex. Civ. App. 631); hence what has heretofore been said disposes of such contention.

If appellant was a subscriber for insurance under the Compensation Law, it failed to so assert, either by pleading or proof; and, as the record discloses that it was subject to the provisions of said law, all of the assignments complaining of the action of the court in refusing to submit, as an affirmative defense, the negligence of appellee, are overruled.

[9] Appellant challenges as error the definition given by the trial court of "contributing proximate cause," because it fails to include the element of the appellant reasonably contemplating the result of such contributing proximate cause, under the facts and circumstances, and that it is in conflict with the definition of proximate cause in the court's main charge. There is no conflict in the court's definition of proximate cause and his definition of contributing proximate cause. In M., K & T. Ry. Co. of Texas v. Turner (Tex. Civ. App.) 138 S. W. 1126, it is said:

"The court instructed the jury that 'the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new independent cause, produces that event, and without which said event would not have occurred.' Appellant's objection to the instruction is that 'it does not give a correct legal definition of proximate cause,' because it did not 'require that the defendant should have reasonably anticipated injury to any one as the result of the acts for which it was sought to be held responsible.' We do not think the definition is an illuminating one, but is not incorrect. Railway Co. v. Byrd, 89 S. W. 991, 40 Tex. Civ. App. 315; Railway Co. v. Stevens, 83 S. W. 236, 37 Tex. Civ. App. 80; Wehner v. Lagerfelt, 66 S. W. 221, 27 Tex. Civ. App. 520; 6 Words and Phrases, First Series, p. 5760. If appellant thought the term should be further defined, it should have notified the court of the fact by a request for a further definition thereof." Thompson & Ford Lumber Co. v. Thomas (Tex. Civ. App.) 147 S. W. 296; Fort Worth & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 255 S. W. 674.

The definition given by the court reads:

"'Contributing' proximate cause,' ds that term is used in this charge, is a cause which, in a continuous sequence unbroken by any other new independent cause, contributes to produce an event or injury, and but for which same would not have occurred."

The appellant did not request by special charge any other or further definition of the term "contributing proximate cause."

It is held in St. Louis S. W. Ry. Co. v. Wilkes (Tex. Civ. App.) 159 S. W. 126, that, if several efficient causes contribute to an injury, and without the operation of each the injury would not have occurred, each cause is a proximate cause. "If there intervenes between a remote cause and the injury a distinct, unrelated, and efficient cause, or if no injury would have occurred, notwithstanding the condition, but for such independent cause, such remote cause does nothing more than furnish the condition, and cannot be held to be either the sole or concurrent proximate cause." H. & T. C. Ry. Co. v. Gerald, 128 S. W. 166, 60 Tex. Civ. App. 151.

[10] Appellant urges that the court committed error in rendering judgment against it, because the findings of the jury on the issues submitted were in conflict. This contention is not tenable for the reason that the finding of the jury that appellee was negligent in assisting and stacking the 100-pound sacks of corn chops, 8 sacks high, becomes immaterial, for, under this record, appellant was subject to the Workmen's Compensation Law, with which it failed to comply, so far as this record reveals.

The other assignments urging error in the charge of the court have been duly considered, but, in our opinion, none of them present reversible error, and, without discussing them in detail, they are overruled.

[11] Appellant, by numerous assignments, contends that the judgment against it should be reversed because of the misconduct of the jury in the particulars presented by the record, and that the trial court committed error in refusing to set the verdict aside and grant it a new trial. The misconduct of the jury was urged by appellant in its motion for a new trial, and testimony of all the jurors heard thereon by the trial court.

Harry Munson testified:

That he remembered a discussion in the jury room about the appellant not having any insurance; that, as he understood it, at the first injury the appellant had insurance, but at the last injury it had none. "I heard Mr. Twaddell make a statement in there before the jury during the deliberation about having had people in his employ killed or hurt, and about having made a settlement with them without lawsuit."

Mr. Twaddell testified:

That while in the jury room he asked if the mill was not required to carry indemnity insurance, and remarked that he had had a man killed, and settled with the deceased's wife without any lawsuit. That this was said to the jury. That he also remarked, "That every one of us contractors were required to carry it. I don't recall the words, but I am sure I mentioned an experience I had when I was a contractor. As well as I remember it, I remarked that I had a man killed, and that I settled with his wife without any lawsuit. I don't remember if I said in the jury room that a man should be paid when he got hurt regardless of the negligence or want of negligence of the employer. I don't remember saying that at all, but that is generally considered." That he also stated to the jury that, while he was working for Fred Bone, he had a stroke of paralysis, and that Fred came to his house several different Saturdays, and paid him $20 a week for 7 weeks, but while he was at work he was drawing $36 a week. That Fred Bone wasn't responsible for his having a stroke of paralysis. That he recalled Mr. Ballew stating that he was hired to dig a ditch, was new, and was working for wages as a common laborer and was trying to do his very best, and, consequently, became exhausted, and this statement was made along the line of the testimony as to why appellee had undertaken to do work that was too heavy for him. "I think I was the first one that brought up the matter about attorney's fees. I know it was discussed time and again by different ones, but I think I was the first man, and that I said, in substance, that I thought, in order to determine how much Hess is entitled to, we should know that I thought it was considered for the lawyer in a case of that kind to furnish all the expenses and give the plaintiff half." That this was discussed time and again. That he had heard repeated time and again that Works & Barrett got 50 per cent. in those kind of cases. "Concerning whether those things helped me form my conclusion about the merits of the case, certainly. You would have to know. I think you would have to form an opinion about how much he was entitled to and how much he would have after his lawyer was paid. I didn't take into consideration any more than that much. I make up my mind that the lawyer would have half of it, and that would leave Hess so much, and so on. As a juror, I arrived at the verdict in answering the special issues, from the statements of the testimony, and the arguments made there in the jury room, and the court's charge."

Mr. Van Shaw testified:

That he thought they mentioned the fact that the appellant should have had insurance. "I think that is the way they figured it. It seemed to them it wasn't the boy's hard luck that the mill didn't carry insurance. That is the way they argued that. They seemed to think the mill should carry insurance on him. That is the way they considered it. It seemed to be kind of understood between them."

Mr. Ballew testified:

That the question was asked in the jury room whether or not appellant carried insurance. "I think I can tell you how it came about that I told about my experience in digging ditches. It was in reference as to wheth-

er or not Mr. Hess thought that he had this work to do to hold his job, and I think that is what prompted me to say what I did about the job I had. I made that statement in discussing Hess' testimony that he gave along that line."

Mr. Wagner testified that something was said to the effect that appellant did not carry insurance.

Mr. R. A. Hess testified:

"I think the matter was brought up about the mill not having any insurance. They said it could not be considered in this. I think somebody started to say something about that they didn't have insurance at that time, and they said, 'Well, we could not consider that.' It might have come to us that the mill was subject to penalty for not having insurance, but I do not remember that."

Mr. Mahan testified that something was said about whether or not the mill had insurance, but that it was further stated that the insurance did not have anything to do with the case.

Mr. Abrams testified:

"Some one spoke something regarding the fact that the mill was required to have insurance on there, and that they didn't have it, and that there was a penalty against them for not having it, and that they ought to pay something on that account, but I don't remember who it was. I believe that statement was made before the verdict was arrived at; in fact, I know it was."

J. P. Kearns testified:

That he heard Mr. Twaddell make the statement about making certain settlements with men who worked for him. That he stated he had made a settlement with the widow, and that it was never brought into court, and that probably it was not the mill's fault that the man was hurt, but they were the unlucky people for having him in their employ at the time the accident occurred. "It was just in the discussion that if a man is hurt it was no more than right that the other party should pay him something for being hurt. That he was hurt for the rest of his life and that they were the unlucky concern to have him in their employ, just as he (Twaddell) was when this man fell from his scaffold."

He also testified in regard to the statements made by Mr. Twaddell about receiving a stroke of paralysis while working for Fred Bone:

"That matter was mentioned and discussed there in connection with the damages or injuries of Mr. Hess. It came up in the regular course of the deliberation of the jury. I must admit that Twaddell's statement was probably brought out. That argument was brought up at a time when it had some effect, and had something to do with it. It was not admissible, however, but it was something to draw a parallel experience; in other words, that had something to do with the issue that they were deliberating about, but not with the

decision. For me personally, I must say that the remarks did not have any effect; but the rest of the jury—it seems like it did. That part of Mr. Ballew's remarks was brought up under the heading of a man having his work ahead knowing what his life demanded of him; that he had to support one or two or three of a family; that he would go ahead and insist on doing the work, even though it was hazardous, or considered heavier work than he could endure. That statement was made to the jury in the jury room, and it came up in the testimony of Mr. Hess that he figured that he had to go ahead and do the work that was assigned to him out there. Nothing was said that I heard about not discussing or considering those things in that connection."

The testimony heard by the court on the motion for new trial covers over 50 pages, but the above is sufficient to reflect generally what took place; and there is no uncertainty, from the entire record, that these statements and discussions occurred in the room during the deliberation of the jury.

The jury, with one exception, claimed they were not influenced by these matters, but reached their verdict from the law as charged by the court and the evidence admitted by the court for their consideration.

"The determinative rules, or principles, of law are plain and well established, if, upon a consideration of the whole of the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts. H. & T. C. Ry. Co. v. Gray, 143 S. W. 606, 105 Tex. 42; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Hines v. Parry (Tex. Com. App.) 238 S. W. 886. It may be clear that 11 (or a lesser number) of the jurors were not, to any degree, influenced by the improper conduct; yet if it remains reasonably doubtful whether one (or a larger number) was, or was not, influenced, the vice remains, and the verdict must be set aside (Southern Traction Co. v. Wilson, supra), because each juror can rightly agree to the verdict only when guided solely by the instructions of the trial judge and the evidence heard in open court. A proper corollary is that, when misconduct is once shown, and there is reasonable doubt as to its effect, that doubt must be resolved against the verdict. * * *

"For the application and enforcement of these principles there are other rules whose justice cannot be doubted. If upon a material issue a juror be influenced at all, the extent (or rather the impossibility of measuring with exactitude the extent) is immaterial; this because definite portions of an opinion or idea cannot be allocated to each of its various confederate causes. See Southern Traction Co. v. Wilson, supra.

"Again, the absence of actual effect cannot be established (conclusively, at least) by the most emphatic denials made by jurors when they are called to account. Hines v. Parry (Tex. Com. App.) 238 S. W. 886; San Antonio Trac-

tion Co. v. Cassanova (Tex. Civ. App.) 154 S. W. 1190; J. H. W. Steele Co. v. Dover (Tex. Civ. App.) 170 S. W. 809. * * * It is known by us all, furthermore, that none of us can definitely appropriate to any one thing its exact effect when an act has been done, or an opinion formed, under circumstances where some other thing may have contributed (subconsciously, perhaps) a portion to the result; hence it becomes the duty of the court to look over and beyond the juror's protestation that he was influenced only by the 'law and evidence.' " Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, and authorities therein cited.

In view of the record, and the authorities, we are of the opinion that the trial court committed error in refusing to grant appellant's motion for a new trial on account of the misconduct of the jury.

The judgment is reversed, and the cause remanded.