**AMARILLO TRACTION CO. v. RUSSELL**
**(No. 2737.)**

(Court of Civil Appeals of Texas. Amarillo.
Jan. 12, 1927. Rehearing Denied
Feb. 9, 1927.)

**I. Negligence ☞61(1)—Each efficient cause of injury is "proximate cause."**

If several efficient causes contribute to an injury, and without operation of each the injury would not have occurred, each cause is a "proximate cause."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**2. Negligence ☞61(1)—Defendant whose negligence is contributing cause to injuries is liable.**

Where negligence of defendant is contributing cause to plaintiff's injury, defendant is liable therefor as if negligence was direct sole proximate cause.

**3. Master and servant ☞285(1)—Whether street railroad should have anticipated collision with truck backing across street resulting in injury to motorman held for jury.**

In street car motorman's action against employer for injuries received in collision with truck backing across street, whether street railroad should have anticipated collision under such circumstances *held* for jury.

**4. Master and servant ☞285(1)—Whether street railroad should have anticipated injury to motorman in collision with truck striking vestibule above bumper held for jury.**

In street car motorman's action against employer for injuries received in collision with truck, question of whether reasonably prudent person should have anticipated injury resulting from truck striking parts of vestibule above bumper on street car was clearly a question for jury and should have been submitted to them.

**5. Master and servant ☞297(2)—Jury's finding of failure to provide safe car for motorman held not in conflict with finding of assumption of risk of collision.**

Jury's affirmative answers to special issue relative to street railroad's failure to provide motorman with reasonably safe car as being proximate cause of injury, when car collided with a truck, *held* not in conflict with answer to special issue, to effect that risk of collision was assumed by employee, since negligence charged and found might exist and liability may be defeated by assumption of risk.

**6. Master and servant ☞226(1)—Motorman does not assume risk of employer's negligence in operating unsafe car.**

Street railroad motorman's assumption of risk of collision does not create assumption of risk incurred by him in unsafe car, which was rendered unsafe by negligence of employer.

**7. Master and servant ☞206—"Risk" ordinarily incident to work is assumed.**

"Risk" which employee assumes is that risk ordinarily incident to work engaged in, and means risk of injury that does not grow out of negligence of employer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Risk.]

**8. Appeal and error ☞1005(3)—Appellate court cannot disturb trial court's findings on motion for new trial on conflicting evidence.**

Where, on motion for new trial, trial court on conflicting evidence determined that statement alleged to have been made by. juror during discussion and to have influenced verdict of juror was not made, Civil Court of Appeals is not authorized to disturb such finding.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by J. C. Russell against the Amarillo Traction Company, and F. F. Finklea, subsequently dismissed as to defendant last named. Judgment for plaintiff, and defendant appeals. Reversed and remanded for a new trial.

Turner, Culton & Gibson and J. B. Dooley, all of Amarillo, for appellant.

F. P. Works and H. T. Neely, both of Amarillo, for appellee.

RANDOLPH, J. This suit was filed by appellee against appellant to recover damages for personal injuries. The parties will be styled as in the trial court. The case was tried before a jury, and on issues submitted to them and answers thereto by them, the trial court rendered judgment in favor of plaintiff, and defendant has appealed.

The plaintiff's suit was against the defendant and E. E. Finklea, the driver of whose truck it was alleged backed into the street car that the plaintiff was driving. Settlement was had between plaintiff and the said Finklea, and as to him the case was dismissed.

Plaintiff's petition alleged substantially:

That the defendant owned and maintained a line of street railway operating in Amarillo, Tex. That on or about the 27th day of December, 1924, the plaintiff was in the employ of said defendant as a motorman, having charge and operating°one of the street cars of said defendant over its line of street railway. That about 7:45 p. m. of said December 27, 1924, while in the regular course of his said employment, and in the regular discharge of his duties therein, plaintiff was running said street car eastward along Seventh street, coming from San Jacinto Heights addition and approaching the business portion of Amarillo, when said street car struck and was struck by a delivery truck owned and operated by said Finklea, at a point between Van Buren and Harrison streets, where the alley running north and south between said streets crosses the street car track. That at and before the time of the collision, plaintiff was standing at his proper place in the

front or east vestibule of said street car, looking eastward down and along said track, with his hands upon the controller and brake wheel of the street car with which same was controlled, said street car moving at the time plaintiff first discovered said truck at the rate of about 18 miles per hour. That he first discovered said truck backing rapidly out of said alley from the north and backing down and across said street car track towards the west, meeting said car a few feet east of the west line of the alley. That immediately on so discovering said truck, plaintiff threw the power off of the street car and set the brakes thereon with all his strength and force, reducing the speed of the car and bringing same to a stop in the quickest possible time, he using all the means within his power to promptly and effectively prevent said collision. That notwithstanding his efforts, the car struck the truck and was struck by the truck, the front end of the street car being jammed against the back end of the truck with such force and violence as to smash in and crush the front end of the said street car, break the controller box from its fastenings and braces, and throw same against and upon plaintiff; he falling backwards in the front of said car, and the controller box, weighing about 150 pounds, falling with great force and violence on plaintiff's left leg, knee, ankle and foot. That the brake wheel and its attachments were also knocked loose from their fastenings on the front end of the car, striking against or falling upon plaintiff. That plaintiff exerted all of the strength of his right hand and arm in setting said brakes, and the jar of the collision while his arm was under great strain so jerked, sprained, and shocked his said right arm, spraining and stretching the ligaments thereof, as to greatly weaken and permanently injure same. That said falling objects, including said controller box and the broken glass and splintered wood of said car, also cut, bruised, mashed, and sprained plaintiff's entire body, especially cutting him about his face and neck, and striking his head with such force as to cause continuous bleeding from his mouth and nose. That by said falling objects, and the falling on him of said objects, his back was wrenched and strained, and the muscles, tendons, and ligaments of his said left leg, right arm, and back were strained, stretched, torn, and permanently injured, and his entire nervous system being shocked are permanently injured, and he being rendered nervous and weakened thereby.

That as a proximate result of said injuries his left leg, ankle and foot, and said right arm, have been greatly reduced in strength, and he suffers almost constant pain therefrom. That said injuries are permanent, and his earning capacity has been greatly reduced, as well as his life expectancy, which, but for said injuries, would have been 14 years, he being at that time about 49 years of age, and also setting forth his decreased ability to work and decreased earning capacity.

The petition also alleges that the framework and braces of the front end of the car were constructed of wood which was rotten and decayed, especially at the joints thereof, so that proper and safe support was not given the front end of the car and the controller box and attachments; that said rotten and decayed framework and braces were largely covered by sheet iron and were hidden from plaintiff's view, but said condition was known to defendant company, or in the use of ordinary care should have been known to it; that when said collision occurred, the front end of the car was easily crushed in on account of said rotten and decayed condition of said framework and braces and said controller box, which was attached thereto, and other objects which fell on and injured plaintiff were thereby permitted to fall upon and injure him, which would not have occurred had said framework been in sound and safe condition; that it was the duty of defendant to furnish plaintiff a reasonably safe car. which duty it failed to perform, in that said front end of said car was in said decayed and weakened condition; that said defendant was negligent in furnishing said car, such negligence being the proximate cause of plaintiff's injuries

Defendant's answer contains: General demurrer, special exceptions, general denial and special plea, setting up two ordinances of the city of Amarillo; the first being:

"A vehicle shall not back to make a turn if doing so will obstruct the traffic, but shall go to a place with clear way enough for the purpose."

And the other providing:

"Drivers to prevent accidents must observe traffic, exercise caution and signals by hand and other efficient methods before slowing, stopping, or backing."

And it pleaded that the conduct of the driver of the truck was negligent and in violation of said ordinances, and was the proximate cause of the injuries to the plaintiff, and urges same as a bar to any recovery by plaintiff as against it.

Further, defendant alleges that the plaintiff was negligent in that he failed to keep a close lookout, etc., and that plaintiff drove the car at a dangerous rate of speed.

No attempt will be made to dispose of each of defendant's 18 propositions in the order in which they were presented, and we will discuss only such propositions as we think are material to the disposition of the case.

After defining "ordinary care," "proximate cause," "contributing proximate cause," and "contributory negligence," the trial court submitted to the jury the following special issues:

"No. 1. Did defendant traction company use ordinary care to provide plaintiff with a reasonably safe car for his use as a motorman?"

Which the jury answered in the negative.

"No. 2. Was the failure of the defendant traction company to use ordinary care in providing plaintiff with a reasonably safe car for his use as a motorman (if you have found that it did so fail) a proximate cause of injuries to him?"

This the jury also answered in the negative.

"No. 3. Was the failure of the defendant traction company to use ordinary care to provide plaintiff with a reasonably safe car for his use as a motorman, if you have found that it did so fail, a contributing proximate cause of injuries to him?"

This the jury answered in the affirmative.

Issue No. 6 submitted was as follows:

"Was the negligence of the driver of the truck that collided with the street car the sole proximate cause of plaintiff's injury?"

This was answered in the negative.

Construing this verdict, we hold that the jury found: That the negligence of the defendant and of the truck driver each contributed to plaintiff's injuries, and were each efficient proximate causes of said injuries.

The defendant assigns as error the failure of the trial court to give its requested peremptory instruction for the reasons: (1) Because it appears from the evidence that the admitted negligence of the truck driver was the active, efficient, proximate cause of plaintiff's injuries, and that no act or omission on the part of defendant could have been the proximate cause or contributing proximate cause of said injuries; (2) because the plaintiff wholly failed to show, either by pleading or proof, the existence or violation of any legal duty owing by defendant to the plaintiff bearing on the casualty in question; (3) because it is evident that no alleged negligence charged against defendant could be recognized in law as the sole or contributing proximate cause of such injuries.

[1, 2] This court has held that if several efficient causes contribute to an injury, and without the operation of each the injury would not have occurred, each cause is a proximate cause. Great West Mill & Elevator Co. v. Hess (Tex. Civ. App.) 281 S. W. 238; Latta v. Bier (Tex. Civ. App.) 281 S. W. 241. Consequently, the jury having found that the negligence of the defendant was a contributing cause to the injury of the plaintiff, the defendant would be liable for such injuries as if its negligence was the direct sole proximate cause.

It is true that the defect in the vestibule of the street car was one that ordinarily would not threaten the safety of the plaintiff, but it existed, and when the car was put in motion it became a menace to his safety that only needed the concurrence of the negligence of the truck driver to cause his injuries.

In the case of Seale v. G. C. & S. F. Ry. Co., 65 Tex. 278, 57 Am. Rep. 602, our Supreme Court laid down the rule:

"When a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured, whose injury is the natural and probable consequence of the misconduct; and that the liability extends to such injuries as might reasonably have been anticipated, under ordinary circumstances, as the natural and probable result of the wrongful act."

Would a reasonably prudent man have anticipated the result brought here before us? In this day of reckless driving of automobiles and trucks, when a disregard for the safety of others seems to have taken possession of many of the people, and collisions are of almost hourly occurrence on the highways and streets of the state and nation, would a reasonably prudent person have anticipated that a street car, pursuing its peaceful but rapid way, would be likely to come into collision with some driver bent on making time at the expense of safety of himself and others? Under the conditions now existing, it would not be doing violence to justice to charge such anticipation to every reasonably prudent person.

The defendant has cited and strongly relies upon the decision of the Supreme Court in the case of T. & P. Railway Co. v. Bigham, 90 Tex. 227, 38 S. W. 164, as sustaining his propositions set forth above, and insists that the rule laid down in that cause concludes the question before this court. We do not think the facts of that case make the holdings therein conclusive of the questions heretofore discussed. In that case cattle had been penned in stockpens belonging to the defendant railway. The gate for admitting entrance into the pen was out of repair, and had been for some weeks, as appellant in that case knew. The appliance for fastening it was defective, due to the negligence of the defendant. In order to prevent the escape of the cattle, the plaintiff in that case was in the act of fastening it with a rope when the cattle plunged against the gate and hurled him to the ground unconscious. Chief Justice Gaines held that the defendant could not be held responsible for the consequences of an act which could not have been foreseen; that it ought not be deemed negligent to do, or fail to do, an act, when it was not anticipated and should not have been anticipated that it would result in injury to any one, but says:

"Ought the agents of the company to have foreseen that, as a result of the imperfect fastening of the gate, the injury [plaintiff's personal injury] or any injuries similar in character, would probably result? In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury to the person of the plaintiff. The act of the defendant

in permitting the fastening to its gate to become insecure was in itself lawful; and since it was clearly out of the range of reasonable probability that an injury to the person of any one should result, it should be held as a matter of law that the negligence of the company gave no right of action for such injuries."

[3] But, applying the rule laid down by him to the damage to the cattle, he says that the plaintiff was entitled to recover such damages—that the defendant should have reasonably foreseen that by reason of the defective latch the cattle might escape, and that the plaintiff might suffer loss. In other words, in the Bigham Case, the Supreme Court held that the defendant could not reasonably anticipate that the noise of the passing train would so frighten the cattle as to cause them to rush against the gate at the very moment that the plaintiff in that case was attempting to secure the gate. But, in this case, the performance of his duty to the defendant required the plaintiff to be at the very place where he was injured, and he was injured while in the actual performance of that duty. Consequently, it cannot be said that such injury did not reasonably grow out of the performance of that duty, and could not have been anticipated by the defendant, and therefore we cannot say, as a matter of law, that a reasonably prudent man would not have anticipated the collision under the circumstances of this case.

Defendant in due time tendered to the trial court the following special issue, for submission to the jury:

"Gentlemen of the jury, should a man of ordinary prudence under the circumstances have reasonably foreseen that the street car in question, while running at a rate of speed approximating that on the occasion in question, would probably collide with some vehicle that would strike the street car on the front of the vestibule above the bumper, resulting in injuries to the motorman or other occupant of the car, similar to the injuries plaintiff claims?"

[4] The record discloses that the base of the front vestibule of the street car was protected by a strong timber which was not damaged by the collision, but that the damage inflicted by same was inflicted by the higher parts of the truck striking the sheet iron protector of the vestibule above such base timber or bumper. Whether or not this should have been anticipated by a reasonably prudent person under the circumstances was clearly a question for the jury, and such issue should have been submitted to them. T. & P. Ry. Co. v. Reed, 88 Tex. 439, 31 S. W. 1058, 1060; Kirby Lumber Co. v. Cunningham (Tex. Civ. App.) 154 S. W. 289; Magnolia Pet. Co. v. Ray (Tex. Civ. App.) 187 S. W. 1085; Washington v. M. K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 764; F. W. & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 235 S. W. 664.

[5] The defendant assigns as error that there is a conflict in the findings of the jury in their answers to issues 1 and 3, and in the answer to defendant's special issue No. 1. The trial court's special issues Nos. 1 and 3, and the answers of the jury thereto, have been given above.

Defendant's special issue No. 1 is as follows:

"Was the risk of the collision in question one of the ordinary and usual risks of his employment which the plaintiff assumed?

"In this connection you are instructed that an employee assumes the ordinary risks of his employment, which are risks existing independently of negligence on the part of the master, and such as are to be expected from the particular character of the service in which the employee is engaged."

The jury answered this issue, "Yes."

These issues are not conflicting, for the reason that the negligence charged and found by the jury might exist and yet liability therefor be defeated by the assumption of the risk by the employee.

Defendant also assigns as error that since the jury found that the alleged negligence of the defendant company was not a proximate cause of plaintiff's injuries, and that the risk of the collision in question was one of the ordinary and usual risks of the employment which plaintiff assumed, it follows that such findings necessarily preclude any recovery in favor of appellee.

[6] There is no contention on the part of plaintiff that the collision occurred through the negligence of the defendant. Hence, even though he assumed the risk of such collision, the answer of the jury in no wise makes plaintiff assume the risk incurred by him in the operation of an unsafe car, which was rendered unsafe by the negligence of the defendant.

[7] The "risk" which the employee assumes is that risk ordinarily incident to the work he is engaged in, and means a risk of injury that does not grow out of the negligence of the defendant. Freeman v. Fuller, 60 Tex. Civ. App. 242, 127 S. W. 1194, 1197; writ denied. It is clear that the plaintiff in this cause seeks to recover for injuries which were caused by negligence of the defendant, and not ordinarily incident to his employment. The Workmen's Compensation Act does not apply to the defendant herein, it being an electric railway. Vernon's Texas Civil Statutes 1918, article 5246—3; Revised Civil Statutes 1925, article 8306. Hence, the taking of insurance on its employees by the defendant was a voluntary act on its part, if it had such insurance. However, we do not deem it necessary to pass upon defendant's assignment that plaintiff's counsel, by innuendo, commented upon defendant having such insurance from the viewpoint of the defendant not being required to take out such insurance, for the reason that we do not think the language used by plaintiff's coun-

sel, independent of defendant's objection thereto, necessarily had the meaning given to it by defendant's counsel. The witness Lynch, the secretary of defendant company, being on the stand, was asked by the defendant's counsel the questions and gave the answers following:

"Q. What I am getting at, Mr. Lynch, is how it happened that the plaintiff has been running the car any lately? A. Yes, he had.

"Q. I say, how does it happen? A. Well, I don't really know. Mr. Spiller employed him, I guess. I paid him, gave him the check when he came to the office with his time. I can't say whether he applied to Mr. Spiller for the position, or Mr. Spiller just sent for him, or what it was. As to working for us, there is nothing in that, because I have got nothing against Mr. Russell at all.

"Q. How's that? A. I have got nothing against Russell at all. My feelings for Mr. Russell, notwithstanding this suit, is friendly."

Notwithstanding these statements of the witness could cut both ways, the plaintiff's counsel says he anticipated ill results in its effect on the jury, and he then asked the witness the following question:

"I'll ask you the question if it is not a fact that you are not individually or for your company defending this suit."

The plaintiff in his petition alleges that the defendant company is a corporation duly and legally incorporated and doing business in Amarillo, Tex., with M. N. Baker, who resides in Dallas county, Tex., as its president, and W. W. Lynch, of Potter county, Tex., as its secretary. The question asked of Lynch applied only to his participation in the case and not to any other. Why should the implication be that an insurance company was backing the fight rather than the president or some of its other officers? We think, if we should put the construction on the language insisted on by the defendant's counsel, we would override its most patent implication.

[8] When the jury retired to consider of their verdict, and while the case was being considered, as testified to by one of the jurors, the jury discussed a material matter not in the record, and indicates that such discussion, and a statement made by another juror leading up to that discussion, may have influenced his verdict. Two other jurors, one of them being the one charged with the introduction of the extraneous matter, substantially denied the occurrence as related by the first juror. Whether as a fact the statement was made as testified to by the first juror was decided by the trial court upon conflicting evidence adversely to defendant's contention, and we are not authorized to disturb his findings. It is useless to state the matter under discussion in the jury room. If the juror's statement that

a certain statement had been made by another juror, and certain matters discussed, had been found to be true, it would have come under the rule laid down in the case of Great West Mill & Elevator Co. v. Hess, supra, and the judgment of the trial court must have been reversed. But, by judgment overruling the motion for new trial, the trial court has found that the statement was not made, and that the occurrence did not take place. Hence, it being false as to the alleged statement and discussion before the jury, and it not having occurred, it certainly could not have influenced the one juror's verdict.

We withdraw our original opinion affirming the case, and because of the error of the trial court in refusing to submit the issue above discussed to the jury, we grant the appellant's motion for rehearing, and reverse the judgment of the trial court and remand the case for a new trial.