**RED STAR COACHES, Inc., v. LAMB et al.**

**No. 3415.**

Court of Civil Appeals of Texas.    Amarillo.
May 21, 1930.

On Motion for Rehearing June 18, 1930.

Rehearing Denied July 12, 1930.

Writ of Error Granted Oct. 29, 1930.

Douglas & Scott, of Lubbock, for appellant.

Bean & Klett and Levens & Burks, all of Lubbock, for appellees.

**JACKSON, J.**

This suit was instituted in the district court of Lubbock county, Tex., by the plaintiff Mrs. Will H. Lamb, joined by her husband, against the defendant Red Star Coaches, Inc., to recover the sum of $25,000 as damages for personal injuries suffered by her while a passenger on one of the busses of the defendant.

Plaintiff alleges that the defendant is a common carrier, and that on or about December 10, 1928, while a passenger on one of its busses, riding from Big Springs to Lamesa, Tex., the driver of the bus negligently permitted it to run off into the borrow pit on the west side of the road.  That the defendant was negligent in operating its bus at an excessive and unlawful rate of speed; that it failed to exercise proper care in watching the road; failed to keep the bus under proper control; failed to reduce the speed of the bus so as to make the turn with safety.  That she suffered injuries to her left knee which are permanent and rendered her a cripple for life.

The plaintiff also alleged that, if mistaken in any or all of said specific allegations of negligence, she did not know what caused the coach in which she was riding as a lawful passenger to run off of the highway into the borrow pit and strike the embankment as alleged, but that the defendant was in control and operation of the bus and was charged with the duty of ordinary care for her safety as a passenger, and, if the defendant had used such care, the coach would not have left the road and no wreck would have occurred.  That the defendant, its agents, servants, and employees in control and operation of the bus, were grossly careless, reckless, and negligent, and, as a natural, direct, and proximate result thereof, the coach left the road, ran into the borrow pit, hit the embankment, and caused plaintiff to sustain and suffer the pains, injuries, and damages to the extent and in the amount alleged; all without any warning and without any fault or negligence on her part.

The plaintiff sufficiently alleges the personal injuries sustained, the pain, both mental and physical, suffered, and the damages she sought.

The defendant answered by general demurrer, special exceptions, general denial, and specially denied negligence. It alleged that the accident was unavoidable; that its servant was not making over twenty miles per hour; that it was about 6:30 a. m., before daylight, and another car was coming from the opposite direction on a lateral road, which continued straight on westward from the point where the main highway turned northward; that the lights of the other car were shining directly into the eyes of the driver and blinded him; that he was unable to discover when he reached the curve in the highway; that there were no highway markers to notify him of the approach to the curve; that he was deceived and misled into believing that the other car was on the main highway and slowed the bus down almost to a stop and was waiting for the other car to pass, when he suddenly discovered that he was at the

curve in the highway and was unable to stop or make the turn.

On special issues submitted, the jury found, in effect, that the driver of the motor-bus immediately preceding and at the time of the accident was guilty of negligence; that such negligence was the proximate cause of the accident and the proximate cause of the alleged injuries to Mrs. Lamb; that such injuries were not due to an unavoidable accident; and that the plaintiff had been damaged as a result of the injuries, in the sum of $12,000.

On these findings judgment was rendered for the plaintiffs against the defendant for said amount, with interest thereon from October 10, 1929, from which judgment this appeal is prosecuted.

The appellant presents as error the action of the trial court in refusing to grant it a new trial, because of the misconduct of the jurors in discussing during their deliberations the attorney fees which plaintiff would be required to pay out of the recovery; the insurance carried by the defendant to protect itself from damages, and asserting that busses generally took up too much of the road and traveled at a high rate of speed and parties passing them had to take care of themselves.

Mr. Bedford testified on the hearing of the motion for a new trial to the effect that he was one of the jurors, and that the first thing the jury did in the jury room was to answer all but the last question. That this made it necessary to answer the last issue, which asked the amount of damages plaintiff was entitled to recover. That, with very little discussion on the last question, a vote was taken, and each juror stated the amount he thought the plaintiffs should recover. That the amount which each juror voted for was totaled and divided by twelve, which gave the result of $14,700, but this was done only as a working basis, was not binding on any of the jurors, and that there was no agreement to abide by such result. That the amounts as determined by the different jurors respectively varied from $4,000 to $20,-000. That he, himself, had fixed in his mind the amount of $5,000 and voted that plaintiff be allowed said sum.

That after the first ballot, "the matter of attorney fees that plaintiffs might have to pay was discussed in the jury room, the matter of insurance that the defendant might carry was discussed in the jury room. * * * I believe I heard some remark to the effect that busses would take up the road as they passed other automobiles. * * * That remark as to taking up too much of the road was made openly. As to what was said about the amount of attorneys' fees that the plaintiff would have to pay her attorneys, I

can't give the name of the individuals. I don't remember who they were but their remarks came in. They said that the amount of the attorneys' fees was figured on a percentage of the amount given to Mrs. Lamb. That was discussed among the jurors. There were numerous statements made with reference to attorneys' fees and the substance of them seemed to be that the amount was figured on the percentage basis as an average.

"With reference to insurance, I don't remember who brought up that statement but it was brought in. It was discussed some and then someone said that we were not to consider that at all and it was not discussed any further in open conversation. * * * I discussed the matter of insurance some with Mr. Gaither. Mr. Gaither was on the jury. He and I were talking about whether a bus company was insured or bonded and how their protection was. He was telling me about a case of his company where a laborer was hurt in an accident. Mr. Gaither seemed to think that the bus companies were all covered by insurance. I believe there was some discussion about the insurance company having to pay the judgment rendered. With reference to the insurance company having to pay the judgment rendered, I believe it was stated that up to the amount of the insurance carried by the company, Watson boys would not be out anything up to that amount. The question was asked what amount of insurance was carried and there seemed to be a difference of opinion as to the amount. The best I remember the opinion as to the insurance carried seemed to be about $10,000.00. * * * I do not believe that the amount of attorneys' fees, insurance, bills, the fact that some times a bus or busses take up all the road, and such things as that, that I permitted them to influence my verdict. * * * I do not believe that I can entirely forget the discussions that took place, but I believe that I could make up my mind as to the amount without being influenced by them. I would not just be positive that my answers to those various questions was wholly uninfluenced by those things, that is, the discussions that took place."

Mr. Liles, one of the jurors, testified that: "It was mentioned by one or maybe more than one of the jurors that the plaintiff would have to pay probably a good percent of any recovery she got for attorney fees. It was talked about being out there on the highway and the way busses would pass you on the road going and coming. It was up to you to watch out for your own self when you met one of them. * * * I voted for $4,000.00 on the first ballot. I later changed to $12,000.00. * * * The matter of insurance and attorney fees and prejudice toward bus companies was discussed between the first vote and the final vote on the damage

issue mostly. * * * What little discussion there was about the insurance company having to pay any judgment that might be rendered in the case was that the Watson boys would not be out anything but that they had to carry insurance, that was the effect of it."

Mr. Eastman, one of the jurors, testified, in substance, that he did not know that anything at all was said with reference to carrying insurance, except some fellow wondered if they carried insurance, and somebody else answered that the state of Texas required bus companies and the transportation companies to carry insurance for the protection of the people who rode on them. That he did not think that there was anything said in the jury room about plaintiffs having to pay a portion of their judgment as attorney fees. That some one did wonder how much the attorneys would get out of the case, and somebody else replied that those things vary. That it would depend on the amount of work the attorneys had to do.

Eleven of the jurors testified on the hearing for a new trial. Mr. Gaither, a juror who favored a verdict for $20,000, and who discussed insurance with Mr. Bedford, did not testify. The testimony of the eleven jurors is conclusive that the jurors, while deliberating on the amount of damages, discussed whether the defendant carried insurance, were advised that the state required such companies to carry insurance for the protection of their passengers, and that the insurance company would have to pay the judgment, at least to the extent of the amount of insurance carried. The great preponderance of the testimony also shows that the jury discussed attorney fees and the amount thereof. That on the first ballot the amount of damages voted for by the different jurors varied from $4,000 to $20,000. That after the discussion of these extraneous matters a verdict of $12,000 was returned. Each of the jurors who appeared, except Mr. Bedford, testified that his verdict, notwithstanding such discussions, was based on the law and the testimony. Mr. Bedford was uncertain whether such discussions influenced him or not. That the foreman or some one else told the jurors that the attorney fees and insurance was not to be discussed or considered. That thereafter the discussion of such matters was not continued before the jury as a whole, but was discussed by jurors in different groups.

In H. & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606, the Supreme Court uses this language: "If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside."

In Southern Traction Co. v. Wilson, 254 S. W. 1104, 1105, in an opinion by the Commission of Appeals, approved by the Supreme Court, after quoting the above quotation and citing other authorities reaffirming the rule, the court says: "Applying the rule laid down by our Supreme Court in the Gray Case, the court itself will set aside a judgment and order a new trial, where all the evidence, considered as a whole, taken by the trial judge on the hearing of the motion for a new trial, leaves it reasonably doubtful to the Supreme Court as to whether or not the improper conduct of the jurors affected the amount of the verdict."

After discussing the evidence of the jurors before the trial court and stating that eleven of the jurors had testified that they were not influenced by the discussion of attorney fees, and referring to the testimony of one of the jurors, the court continues: "Of course, if it influenced him at all, even though the extent be indefinite, his verdict must be set aside. In this connection we quote as follows from his testimony, as given on the hearing itself before the trial judge: 'I cannot say what effect that discussion (about attorneys' fees) had on me. Of course, it was in my mind at the time, but I cannot say that it affected me to a great extent. It is a hard question for me to answer as to whether it affected me or not at all.' " For this misconduct the judgment was reversed.

In the case before us, Mr. Bedford states: "I would not just be positive that my answers to those various questions was wholly uninfluenced by those things, that is, the discussions that took place."

In the case of Moore v. Ivey et al., 277 S. W. 106, 107, in an opinion by the Commission of Appeals, approved by the Supreme Court, it is stated: "It may be clear that eleven (or a lesser number) of the jurors were not, to any degree, influenced by the improper conduct'; yet if it remains reasonably doubtful whether one (or a larger number) was, or was not, influenced, the vice remains and the verdict must be set aside (Southern Traction Co. v. Wilson, supra) because each juror can rightly agree to the verdict only when guided solely by the instructions of the trial judge and the evidence heard in open court. A proper corollary is that, when misconduct is once shown, and there is reasonable doubt as to its effect, that doubt must be resolved against the verdict. * * * Again, the absence of actual effect cannot be established (conclusively, at least) by the most emphatic denials made by jurors when they are called to account. * * * When it is remembered, as it must be, that every case of misconduct includes violation of the juror's oath, a species of perjury, and liability to punishment for contempt, it is but natural to expect that the juror, when called

into open court to answer about what happened in the jury room and its secrecy, will be earnest in his efforts to excuse and mitigate the offense, but laggard in advancing its actual proportions."

See, also, Great West Mill & Elevator Co. v. Hess (Tex. Civ. App.) 281 S. W. 234; St. L. S. W. Ry. Co. of Texas v. Smithhart (Tex. Civ. App.) 9 S.W.(2d) 146.

■ The holdings announced in the foregoing cases have been followed by a long and unbroken line of decisions, and in our opinion the record in this case, to say the least, makes it appear affirmatively doubtful as to whether or not the verdict was influenced by the discussion of the questions of insurance and attorney fees while the jury was deliberating on their verdict, none of which was in evidence, and this assignment must be sustained.

■ The appellant challenges as error the action of the trial court in overruling its motion to discharge the jury and grant it a new trial after the witness Conrad Watson had testified that Dr. Standipher wired the insurance company for authority to operate upon the knee of the plaintiff, because such testimony apprised the jury of the fact that the defendant carried insurance.

Mr. Watson was vice president or manager of the defendant company and its ticket agent at Lamesa, Tex., and, while on the stand as a witness for the defendant, was asked by appellee's counsel how many times he saw the plaintiff at the sanitarium and who went with him to the sanitarium, and he replied, "The only thing that I went down there for was once just before the operation; that was probably the main reason I went down there, was the reason that Dr. Standipher had wired the insurance company for authority to operate." This answer was objected to by appellant, among other things, because it was not responsive, the objection was sustained and the jury instructed not to consider the answer for any purpose whatever. It is obvious that the answer was not responsive to the question of appellee's counsel, and, if the question of insurance was thereby injected into the case, it was done by appellant's vice president or manager and it cannot take advantage thereof. Carter-Mullaly Transfer Co. v. Bustos (Tex. Civ. App.) 187 S. W. 396; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661.

■ The appellant presents as error the action of the trial court in submitting to the jury the issue, "Do you find from a preponderance of the evidence that the driver of the motor bus immediately preceding and at the time of the accident was guilty of negligence?" because said issue did not confine the jury to the specific grounds of negligence alleged in plaintiff's petition.

Plaintiff, after having alleged specific acts of negligence, then pleaded that, if she was mistaken as to any or all of such specific allegations, she did not know what caused the wreck, but alleged that defendant had control and operation of the coach, and it was charged with the duty of ordinary care for her safety as a passenger, and, if such care had been used, no wreck would have occurred and no injury been sustained. This assignment is overruled. Simmons v. Terrell Electric Light Co. (Tex. Com. App.) 12 S.W.(2d) 1011; Bower Auto Rent Co. v. Young (Tex. Civ. App.) 274 S. W. 295.

We find no reversible error in the record except that presenting the misconduct of the jurors, for which the judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

■ The appellee filed her motion for a rehearing in this case urging as error the action of this court in reversing the judgment of the trial court in her favor for the sum of $12,000 on account of the misconduct of the jury.

She also filed a remittitur in the sum of $7,000 if her motion for rehearing is overruled, provided the judgment of the trial court should be affirmed for the sum of $5,000.

The testimony shows without controversy that all the special issues submitted by the court pertaining to the liability of the appellant had been determined and answered in favor of the appellee before the misconduct of the jury occurred, for which the judgment was reversed.

The only issue answered after the misconduct of the jury was the one assessing the amount of damages appellee was entitled to recover. Prior to the misconduct discussed in the original opinion, a ballot had been taken by the jurors on the amount of damages to be assessed. The smallest amount voted for by any juror was $4,000, and the greatest amount was $20,000. After the discussion of the extraneous matters that constituted the misconduct, a verdict for $12,000 was returned and a judgment entered therefor.

Under the record, the misconduct of the jury could not have affected the verdict on any issue except the amount of damages. As the smallest amount any juror voted to assess before the misconduct was $4,000, the only injury that appellant could have suffered was the amount of the verdict in excess of $4,000.

If appellee, within ten days, will file a remittitur of $8,000, the motion for rehearing will be granted, and the judgment of the trial court reformed and rendered for appellee for the sum of $4,000; otherwise, the

judgment will be reversed as in the original opinion.

This action is based on the holding in the case of Estep v. Bratton et ux. (Tex. Civ. App.) 24 S.W.(2d) 465, 471, on the motion for rehearing and the authorities cited, and also on the case of Texas & N. O. Ry. Co. v. Stevens et al. (Tex. Com. App.) 24 S.W.(2d) 9.